**STATE of Tennessee, Appellee,**

v.

**Russell WILHOIT, Appellant.**

Court of Criminal Appeals of Tennessee, at Knoxville.

Jan. 29, 1997.

No Permission to Appeal for to the Supreme Court.

Jeffery C. Kelly, Public Defender, Deborah B. Huskins, Assistant Public Defender, Johnson City, for Appellant.

Charles W. Burson, Attorney General and Reporter, Hunt S. Brown, Assistant Attorney General, Nashville, David Crockett, District Attorney General, Kent Garland, Assistant District Attorney General, Jonesborough, for Appellee.

## OPINION

WELLES, Judge.

This is an appeal pursuant to Rule 37(b)(2)(i) of the Tennessee Rules of Criminal Procedure. The Defendant pleaded guilty to driving on a revoked license and driving under the influence (second offense). With the agreement of the State and the trial court, he reserved a certified question of law that is dispositive of the case. The certified question arose from the trial court's denial of a motion to suppress evidence obtained from an encounter with a police officer at the Defendant's parked car. We affirm the judgment of the trial court.

The relevant facts are not in serious dispute. At approximately 12:55 a.m. on May 24, 1994, Officer Lewis Edward Nelson was on patrol in a marked police cruiser in Johnson City, Tennessee. Officer Nelson received a broadcast from the dispatcher relaying a telephone call from an unknown citizen. The citizen had called 911 with information concerning a potential drunk driver in a blue Mercury Lynx in the parking lot of the United Station on North Roan Street. The United Station is apparently a gas station and convenience market. The citizen stated that the vehicle in question was at the United Station but was possibly leaving.

Officer Nelson responded to the call and arrived at the United Station shortly after having received the dispatch. As he pulled into the parking lot, he observed a vehicle fitting the description given by the anonymous caller. At the front of the building which housed the convenience market, he also saw an individual standing by a public telephone. The individual looked directly at Officer Nelson and pointed toward the blue Mercury Lynx. At this time, the Lynx began to pull away but stopped abruptly after traveling only a few feet. Officer Nelson stopped his cruiser approximately twenty-

five to thirty feet away from the Lynx in a location providing an unobstructed view of the car. According to Officer Nelson, the parking lot was very well lighted.

The Lynx began to pull forward but stopped abruptly once again. At this point, Officer Nelson made eye contact with the driver of the Lynx, the Defendant. Nelson testified that the Defendant "had that expression that he ... suddenly realized that I was a police officer." Officer Nelson continued his description of the Defendant with the following observation: "He had the total look of an impaired individual, the—the stupor, the gazed—the dazed look, the—the grip on the steering wheel, the slow motor control in looking at me and looking back."

Based on these circumstances, Officer Nelson formed the opinion that the Defendant was impaired. Thus, Nelson decided that he needed to investigate the situation further to determine if the Defendant was a threat to the safety of himself and others on the roadway. He pulled the police cruiser alongside the Lynx and exited his vehicle. As he approached the driver's side of the Lynx, Officer Nelson noticed an extremely strong odor of alcohol emanating from the car. Nelson requested identification from the Defendant, but he could not produce any. At this point, Officer Nelson instructed the Defendant to shut off his engine and to exit the vehicle. Officer Nelson then performed a number of field sobriety tests on the Defendant, the results of which led Nelson to arrest him.

Prior to trial, the Defendant filed a motion to suppress the evidence garnered from the encounter with Officer Nelson. The Defendant argued that the investigatory stop of his car was made without reasonable suspicion, citing State v. James Chester Cobb, Sr., C.C.A. No. 01C01–9011–CC–00308, Hickman County, 1991 WL 71910 (Tenn.Crim.App. filed May 7, 1991, at Nashville). At the hearing on the motion to suppress, Officer Nelson testified to the facts recounted above. He testified further that he had been a law enforcement officer for sixteen years and had received specialized training in the detection of DUI offenses. On cross-examination, Officer Nelson admitted that he had observed no

traffic violations on the part of the Defendant.

The State offered no proof other than Officer Nelson's testimony at the hearing on the motion to suppress. The Defendant supplemented Nelson's testimony with a transcript from the Defendant's preliminary hearing, but offered no other proof. At the conclusion of the hearing, the trial court denied the motion to suppress, finding as follows:

> But he [Officer Nelson] observed him [the Defendant], saw that he had a dazed look on his face, and that he didn't grip the steering wheel as a sober man does and that he saw in his face an expression that he realized that an officer was on the lot, and that he looked in a stupor, and, therefore, as a good officer should, he asked him to step out and did the rest of whatever he did. And I'm of the opinion that this differs greatly from Cob [sic] and that this officer had enough corroborating facts to ask the defendant to step out and to stop him.

With the motion to suppress denied, the Defendant entered guilty pleas while reserving the certified question that is the subject of this appeal.

Through his certified question, the Defendant argues that Officer Nelson lacked the reasonable suspicion necessary to detain and question him. More specifically, he contends that Officer Nelson's observations at the scene did not provide sufficient corroboration of the information supplied by the anonymous 911 call, as is required by State v. Pulley, 863 S.W.2d 29 (Tenn.1993), and similar cases. Accordingly, the Defendant argues that his encounter with Officer Nelson violated his protection against unreasonable searches and seizures secured by the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Tennessee Constitution.

We must first determine at what point the encounter between Officer Nelson and the Defendant amounted to a seizure for Fourth Amendment purposes. The United States Supreme Court concluded in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), that not every interaction between a

police officer and a citizen constitutes a seizure. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Terry,* 392 U.S. at 19, n. 16, 88 S.Ct. at 1878, n. 16.

In the years following *Terry,* the United States Supreme Court refined the concept of what constitutes a seizure. For instance, in *United States v. Mendenhall,* Justice Stewart stated that an individual is seized "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). Although a split among the Court in *Mendenhall* limited the precedential value of Justice Stewart's "reasonable person" test, a majority of the Court has since embraced that standard. *See INS v. Delgado,* 466 U.S. 210, 215, 104 S.Ct. 1758, 1762, 80 L.Ed.2d 247 (1984); *see also Florida v. Royer,* 460 U.S. 491, 502, 103 S.Ct. 1319, 1326–27, 75 L.Ed.2d 229 (1983) (plurality opinion).

■ Applying this standard to the case *sub judice,* we first note that Officer Nelson did not stop the Defendant's car, but rather approached the car while it was parked. It is important to remember that an officer "may approach a car parked in a public place and ask for driver identification and proof of vehicle registration, without any reasonable suspicion of illegal activity." *Pulley,* 863 S.W.2d at 30; *see also State v. Moore,* 776 S.W.2d 933, 938 (Tenn.1989); *State v. Butler,* 795 S.W.2d 680, 685 (Tenn.Crim.App.1990) (citing *Michigan v. Chesternut,* 486 U.S. 567, 575–76, 108 S.Ct. 1975, 1980–81, 100 L.Ed.2d 565 (1988)); 4 LaFave, *Search and Seizure* § 9.3(a) n. 45 (3rd ed. 1996).

■ The record reveals that Officer Nelson, upon driving into the parking lot of the United Station, observed the Defendant's car start moving and abruptly stop twice. Nelson observed the Defendant and, because of his dazed look of stupor and slow motor control, believed him to be impaired. Accordingly, Officer Nelson decided to investigate the situation further and pulled his cruiser alongside the Defendant's car. Nelson exited his vehicle and approached the Defendant's Lynx. At no time did Officer Nelson activate his siren or blue lights, nor did he approach the Lynx with his weapon drawn. He was the only officer on the scene at this time. Officer Nelson did not command the Defendant to stay where he was, nor did he park his cruiser so as to block the Defendant's exit path. Upon approaching the Lynx, Nelson noticed an odor of alcohol. He requested identification from the Defendant and, when the Defendant was unable to produce identification, he ordered him to stop the engine and to exit the Lynx for the purpose of performing field sobriety tests.

■ Under the circumstances of this case, we believe that Officer Nelson's conduct in merely approaching the Defendant's car would not have communicated to the reasonable person that he or she was not free to leave. *See Moore,* 776 S.W.2d at 937–38. The initial encounter between Officer Nelson and the Defendant was not accompanied by physical force or a show of authority sufficient to constitute a seizure. From this record, we conclude that Officer Nelson "seized" the Defendant when, at the conclusion of their initial encounter, he ordered the Defendant to stop his engine and to exit his car.

■ Having resolved when the seizure of the Defendant occurred, we must now address whether Officer Nelson had sufficient justification to effect the seizure. There is no question that the initial encounter between Officer Nelson and the Defendant did not rise to the level of a full-blown arrest, but rather amounted only to an investigatory detention, commonly known as a *Terry* stop. Although less intrusive than a full-blown arrest, an investigatory detention is subject to the constitutional protection of the Fourth Amendment against "unreasonable searches and seizures." *Terry,* 392 U.S. at 20, 88 S.Ct. at 1879. Interactions between the police and the public that constitute seizures but not arrests are judged by their reasonableness rather than by a showing of probable cause. *Id.* The reasonableness of the intrusion is "judged by weighing the gravity of the public concern, the degree to which the seizure advances that concern, and

the severity of the intrusion into individual privacy." *Pulley*, 863 S.W.2d at 30 (citing *Brown v. Texas*, 443 U.S. 47, 50, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)).

■ The law is well settled in Tennessee that an investigative detention requires only a showing of reasonable suspicion rather than probable cause. *See, e.g., State v. Watkins*, 827 S.W.2d 293, 294 (Tenn.1992). Reasonable suspicion must be based on specific and articulable facts indicating that a criminal offense has been or is about to be committed. *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880; *Pulley*, 863 S.W.2d at 30; *Watkins*, 827 S.W.2d at 294; *State v. Seaton*, 914 S.W.2d 129, 131 (Tenn.Crim.App.1995). In evaluating whether reasonable suspicion is based on specific and articulable facts, we must consider the totality of the circumstances, including the personal observations of the police officer, information obtained from other officers or agencies, information obtained from citizens, and the pattern of operation of certain offenders. *Watkins*, 827 S.W.2d at 294 (citing *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621, 629 (1981)); *see also Adams v. Williams*, 407 U.S. 143, 147, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972); *Pulley*, 863 S.W.2d at 31. We must also consider the rational inferences and deductions that a trained police officer may draw from the circumstances. *Watkins*, 827 S.W.2d at 294 (citing *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880, 20 L.Ed.2d at 906).

However, when information is provided by an anonymous citizen, this raises heightened concerns about the reliability of the information, such as the possibility of "false reports, through police fabrication or from vindictive or unreliable informants." *Pulley*, 863 S.W.2d at 31. As a result, our courts have developed a methodology for evaluating the reliability of citizen information. For showings of probable cause based on an informant's tip, our supreme court has followed the former federal two-pronged test that requires proof of the informant's basis of knowledge and credibility. *See Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d

637 (1969); *State v. Jacumin*, 778 S.W.2d 430, 436 (Tenn.1989). The *Aguilar–Spinelli/Jacumin* test has also been used as a guide in assessing the reliability of an informant's tip supporting an investigative detention. *Pulley*, 863 S.W.2d at 31; *State v. Coleman*, 791 S.W.2d 504, 505 (Tenn.Crim.App.1989).

■ Although it is difficult to assess the basis of knowledge or the credibility of an anonymous caller, independent corroboration by police officers can cure deficiencies in showing the reliability of the information. *Pulley*, 863 S.W.2d at 31–32; *Coleman*, 791 S.W.2d at 507. We also note that reasonable suspicion requires a lower level of proof than probable cause, allowing for citizen information that is less reliable than that required for probable cause showings. *Pulley*, 863 S.W.2d at 32 (citing *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 2416, 110 L.Ed.2d 301 (1990)).

We turn now to the question of whether there was sufficient corroboration of the information supplied by the 911 call to support a reasonable suspicion of illegal activity. The record indicates that the Johnson City Police Department received a telephone call from an unknown citizen warning of a potential drunk driver in a blue Mercury Lynx at the United Station on North Roan Street. The caller stated that the Lynx was currently at the United Station but was possibly leaving. Although the caller's basis of knowledge is unclear from the record, the circumstances in which the information was given and the language of the caller suggest first-hand, eyewitness knowledge. Officer Nelson responded to the call, arriving at the United Station shortly after receiving the dispatch. Upon pulling into the lot, Nelson observed a blue Mercury Lynx as well as an individual at the public telephone pointing toward the Lynx.

■ "When an informant reports an incident at or near the time of its occurrence, a court can often assume that the report is first-hand, and hence reliable." *Pulley*, 863 S.W.2d at 32. Moreover, Officer Nelson's investigation of the information confirmed details of the caller's observations shortly after the receipt of the call. The proximity

in time between the anonymous report and the police investigation is significant in assessing the reliability of the information. *See id.* (citation omitted). We therefore conclude that the circumstances surrounding the 911 call and Officer Nelson's verification of the information shortly after its receipt are sufficient to satisfy the basis of knowledge prong of our inquiry.

With regard to the credibility prong, we first note that the identity of the caller was unknown, and hence, his or her credibility could not be directly verified. Police corroboration of several details of the call, such as the description of the car and the location of the incident, supported the caller's credibility. *See id.* Furthermore, Officer Nelson's personal observations of the conduct of the Defendant bolstered the credibility of the caller. Nelson observed the Lynx start and stop moving twice in short succession. The Defendant's dazed look and slow motor control indicated impairment to Officer Nelson's trained eye. In addition, upon approaching the Defendant, Nelson noticed a strong odor of alcohol. These circumstances, we believe, are sufficient to satisfy the credibility prong of our inquiry.

The reasonableness of an investigatory detention turns on the facts and circumstances of each particular case. *See Pulley*, 863 S.W.2d at 34 (citing *Mendenhall*, 446 U.S. at 561, 100 S.Ct. at 1881 (Powell, J., concurring)). In assessing the reasonableness of the investigatory detention involved in the case at bar, we weigh the three factors set forth in *Pulley. See Pulley*, 863 S.W.2d at 30 (citation omitted). The public interest served by the investigatory detention in this case was the prevention of a drunken driving situation. Certainly the gravity of the concern over drunken driving is significant because of its threat to the safety of any citizen on the public roads. Moreover, the seizure in this case advanced that concern to a high degree, allowing Officer Nelson, in light of his extensive experience with impaired drivers, to determine quickly whether the Defendant posed a threat to himself or other individuals. Furthermore, the brief detention of the Defendant for field sobriety tests was a relatively minor intrusion into his privacy. Thus, from the information provided by the anonymous caller, the subsequent corroboration of details of that information, and Officer Nelson's personal observations, we conclude that Officer Nelson had a reasonable suspicion to justify the investigatory detention in this case.

The Defendant likens his case to *State v. James Chester Cobb*, C.C.A. No. 01C01–9011–CC–00308, Hickman County, 1991 WL 71910 (Tenn.Crim.App. filed May 7, 1991, at Nashville). In *Cobb*, a police officer received a dispatch that a possible drunken driver was operating a Ford pickup truck along a certain road. The truck was described as having two male occupants and a tool box in the bed. Within minutes of the dispatch, the officer observed a truck matching the description and proceeded to make an investigatory stop based solely upon the information provided from the dispatch. A panel of this Court held that the police officer did not have a reasonable suspicion to justify the stop because there was no indication that the information received from the caller was credible. *See Cobb*, C.C.A. No. 01C01–9011–CC–00308, Hickman County, 1991 WL 71910 (Tenn.Crim.App. filed May 7, 1991, at Nashville).

Yet, in the present case, Officer Nelson did not make the investigatory detention based solely on the information provided by the unknown caller. Instead, Nelson observed the Defendant to corroborate the caller's information. From these personal observations, Officer Nelson formed the reasonable suspicion necessary to justify the investigatory detention. Thus, *Cobb* is clearly inapposite to the case at bar.

For the reasons set forth in the discussion above, we conclude that Officer Nelson had a reasonable suspicion to warrant the investigatory detention of the Defendant in this case. The trial court did not err in denying the Defendant's motion to suppress the evidence gained as a result of the encounter with Officer Nelson. We affirm the judgment of the trial court.

WADE and SMITH, JJ., concur.