IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 29, 2002

## STATE OF TENNESSEE v. JAMES DEWEY JENSEN, JR.

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 235041    Stephen M. Bevil, Judge**

---

**No. E2002-00712-CCA-R3-CD**
**November 15, 2002**

---

A Hamilton County jury convicted the defendant, James Dewey Jensen, Jr.,[1] of a seventh offense of driving under the influence, theft of identity, and violation of the Motor Vehicle Habitual Offenders Act. The sole issue presented by the defendant in this appeal is whether the trial court erred in denying the motion to suppress evidence obtained as a result of the vehicle stop. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ROBERT W. WEDEMEYER, J., joined.

Jeffrey S. Schaarschmidt, Chattanooga, Tennessee, for the appellant, James Dewey Jensen, Jr.

Paul G. Summers, Attorney General and Reporter; Helena Walton Yarbrough, Assistant Attorney General; William H. Cox, III, District Attorney General; and Thomas E. Kimball, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

During the suppression hearing, Officer Donald Bond with the Hamilton County Sheriff's Department testified that on August 30, 2000, the police dispatcher advised him an EMS unit reported a possible DUI driver on Lee Highway in Hamilton County. The EMT, Paul Boberhouser, reported he was driving behind a yellow automobile which had crossed the center line several times. Boberhouser reported that while he was following the vehicle in his ambulance, the vehicle went down a dead end street and ran over a mailbox. Boberhouser reported the vehicle subsequently

---

[1]The defendant's name is spelled as it appears on the indictment. On some documents, his name appears as James "Jenson," Jr. Our policy is to use the name as it appears on the indictment.

turned onto Blue Bell Avenue where the automobile entered a driveway, and two people exited the vehicle.

Officer Bond testified he met Boberhouser at the intersection of Lee Highway and Blue Bell Avenue. Boberhouser parked his ambulance on one side of the intersection, and Officer Bond parked his patrol car on the other side of the intersection. When Boberhouser told Officer Bond the vehicle had entered a driveway, Officer Bond said, "It's over with." Officer Bond testified he and Boberhouser, who were once roommates, then discussed other topics unrelated to the incident. Officer Bond believed there was sufficient room for a vehicle to "get around" the patrol car and the ambulance because it was a large intersection.

Officer Bond testified that while they were talking, he saw headlights coming over a hill toward them. The red lights on the ambulance were flashing, but the blue lights on the patrol car were not on at this time. When Boberhouser saw the vehicle, he identified it as the vehicle he had been following.

Officer Bond testified the defendant pulled up to the intersection, and his car stalled. The defendant unsuccessfully attempted to restart the vehicle. Officer Bond then got out of his patrol car and asked the defendant if he was having trouble with his vehicle. The defendant answered, "Yeah, I cannot get my vehicle started." Officer Bond testified when he approached the vehicle, he smelled alcohol on the defendant, and the defendant's face was flushed. Officer Bond then asked the defendant to step out of the vehicle. The defendant was subsequently arrested.

On cross-examination, Officer Bond testified he activated his blue lights during the encounter, but he could not recall when he did this. He stated he activated his blue lights either when Boberhouser identified the vehicle or when he got out of his patrol car to inspect the stalled vehicle.

During the suppression hearing, the defendant testified that as he approached the intersection, he saw a patrol car and an ambulance. He stated he saw the lights on both vehicles flashing and thought an accident had occurred. The defendant stated he could not drive around the patrol car and the ambulance, so he stopped behind the vehicles. Officer Bond then began walking toward the car. The defendant testified that at that moment, he did not feel free to leave. He stated the vehicle was loud due to a loose manifold, and in order to hear Officer Bond speak, he turned off the engine.

The trial court denied the defendant's motion to suppress. The trial court found Officer Bond did not receive information from an anonymous informant, but from someone he personally knew. Further, the trial court fully accredited Officer Bond's testimony as to the events and found the officer had a duty to inquire about the stalled vehicle based upon public safety grounds.

**STANDARD OF REVIEW**

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. State v. Ross, 49 S.W.3d 833, 839 (Tenn. 2001). The trial court, as the trier of fact, is able to assess the credibility of the witnesses, determine the weight and value to be afforded the evidence and resolve any conflicts in the evidence. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable inferences drawn from that evidence. State v. Hicks, 55 S.W.3d 515, 521 (Tenn. 2001). However, this court is not bound by the trial court's conclusions of law. State v. Randolph, 74 S.W.3d 330, 333 (Tenn. 2002). The application of the law to the facts found by the trial court are questions of law that this court reviews *de novo*. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). The defendant has the burden of establishing that the evidence contained in the record preponderates against the findings of fact made by the trial court. Braziel v. State, 529 S.W.2d 501, 506 (Tenn. Crim. App. 1975).

**SEARCH AND SEIZURE**

The Fourth Amendment of the United States Constitution states the following:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Further, Article I, Section 7 of the Tennessee Constitution provides:

> [t]hat the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

The purpose and intent of Article I, Section 7 is identical with that of the Fourth Amendment, which is to "safeguard the privacy and security of individuals against the arbitrary invasions of government officials." Randolph, 74 S.W.3d at 334 (Tenn. 2002) (quoting Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730, 18 L. Ed. 2d 930 (1967)); State v. Gonzalez, 52 S.W.3d 90, 95 (Tenn. Crim. App. 2000).

Under the United States and Tennessee constitutions, either probable cause or reasonable suspicion will justify a traffic stop despite the subjective motivations of the police officer involved. United States v. Whren, 517 U.S. 806, 813, 116 S. Ct. 1769, 1774, 135 L. Ed. 2d 89 (1996); State v. Vineyard, 958 S.W.2d 730, 736 (Tenn. 1997). In examining the validity of the traffic stop, courts must determine whether the stop was reasonable under both the state and federal constitutions. State v. Jennette, 706 S.W.2d 614, 618 (Tenn. 1986). The reasonableness of a stop is measured objectively through an examination of the totality of the circumstances. Ohio v. Robinette, 519 U.S. 33, 39, 117 S. Ct. 417, 421, 136 L. Ed. 2d 347 (1996).

## A. Consensual Encounter

The first issue we must address is whether a "stop" or "seizure" occurred requiring constitutional protections. After reviewing the record, we conclude the encounter between Officer Bond and the defendant was a consensual encounter.

When a police officer's interaction with a citizen impermissibly intrudes upon the privacy or personal security of the citizen, it violates the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Tennessee Constitution, which is identical in intent and purpose to the Fourth Amendment. Daniel, 12 S.W.3d at 424. Not every encounter between police officers and citizens is a "seizure," however. Randolph, 74 S.W.3d at 338. A seizure occurs only when an officer restrains the liberty of an individual by means of physical force or show of authority. Terry v. Ohio, 392 U.S.1, 19 n.16, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The courts have held the Fourth Amendment permits three types of police-citizen interactions: (1) a full scale arrest supported by probable cause; (2) a brief investigatory detention supported by reasonable suspicion; and (3) a brief police-citizen encounter, which requires no objective justification. Daniel, 12 S.W.3d at 424.

A law enforcement officer does not violate the Fourth Amendment by merely approaching a person in a public place and posing a question. United States v. Drayton, ___ U.S. ___, ___, 122 S. Ct. 2105, 2110, 153 L. Ed. 2d. 242 (2002). Even if an officer has no basis for suspecting a crime is being committed, he or she may pose questions or ask for identification, provided he or she does not induce cooperation by coercive means. Id; see Daniel, 12 S.W.3d at 425. In order to determine if an interaction between an officer and an individual is a seizure or a consensual encounter, the court must consider all the surrounding circumstances and ascertain whether the "police conduct would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439, 111 S. Ct. 2382, 115 L. Ed. 2d 389 (1991).

In the case at bar, the trial court fully accredited Officer Bond's testimony at the suppression hearing. Officer Bond testified the defendant's car stalled behind the ambulance and patrol car; he did not do anything to indicate to the defendant that he was required to stop his vehicle. The police officer also testified the lights on both the patrol car and the ambulance were activated when he approached the defendant's vehicle. Although activation of blue lights ordinarily triggers a "stop"

or "seizure," see <u>Randolph</u>, 74 S.W.3d at 338, it is not unusual for a police officer to activate the blue lights on his or her patrol car for safety purposes when on the side of a road or at an accident site. Furthermore, the defendant testified he stopped because he thought an accident had occurred, not because he thought Officer Bond had indicated he was required to stop.

Officer Bond testified that he walked to the defendant's vehicle because he thought it had stalled. Officer Bond then asked the defendant whether he was having problems with his vehicle; the defendant replied that the car would not start. When describing the interaction between police officers and citizens on public highways, the United States Supreme Court noted:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers . . . frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

<u>Cady v. Dombrowski</u>, 413 U.S. 433, 441, 93 S. Ct. 2423, 2528, 37 L. Ed. 2d 706 (1973). These community caretaking or public safety functions do not involve coercion or detention, rather a police officer may initiate a conversation with a citizen and ask questions as long as the citizen is willing to answer the questions. <u>State v. Hawkins</u>, 969 S.W.2d 936, 939 (Tenn. Crim. App. 1997). This type of encounter is a consensual encounter, which does not require probable cause or reasonable suspicion. *Id.*

When Officer Bond approached the defendant and questioned him regarding the stalled automobile, he was engaged in a "community caretaking function," which was "totally divorced from the detection, investigation, or acquisition of evidence" relating to an offense. <u>Cady</u>, 413 U.S. at 441. The police officer noticed the defendant appeared to have car trouble and decided to help him instead of leaving him stranded in the road at night.

We conclude the initial contact between the defendant and Officer Bond did not constitute a seizure, but rather was a consensual encounter, requiring neither reasonable suspicion nor probable cause to believe the defendant was engaged in criminal activity. We note that once Officer Bond requested the defendant to step out of the vehicle, the consensual encounter was converted into a seizure requiring constitutional protections, and a reasonable person in the same situation could reasonably believe he or she would not be free to leave. However, Officer Bond testified that prior to requesting the defendant to step out of his vehicle, he smelled alcohol on the defendant, and the

-5-

defendant's face was flushed. We conclude these observations, combined with the information Officer Bond received from the EMT, constituted sufficient cause for the officer to briefly detain the defendant to ascertain whether the defendant was driving under the influence. *See* State v. Wilhoit, 962 S.W.2d 482, 488 (Tenn. Crim. App. 1997).

## B. **Terry Stop**

Even if the initial contact between Officer Bond and the defendant constituted a "stop" invoking constitutional examination, we, nevertheless, conclude it was a proper investigatory stop.

A policeman may make an investigatory stop when the officer has a reasonable suspicion, supported by articulable and specific facts, that a criminal offense has been or is about to be committed. Terry, 392 U.S. at 21; *see also* United States v. Arvizu, 534 U.S. 266, 273, 122 S. Ct. 744, 750, 151 L. Ed. 2d 740 (2002); Randolph, 74 S.W.3d at 334. For a court to determine whether a policeman's reasonable suspicion is supported by articulable and specific facts, the court must consider the totality of the circumstances, that is, the entire picture. Arvizu, 534 U.S. at 273, 122 S. Ct. at 750; State v. Simpson, 968 S.W.2d 776, 783 (Tenn. 1998). This inquiry includes such factors as objective observations, information obtained from other officers or agencies, information obtained from citizens, and certain offenders' patterns of operation. Simpson, 968 S.W.2d at 783; State v. Lawson, 929 S.W.2d 406, 408 (Tenn. Crim. App. 1996). While an officer's hunch is insufficient to justify an investigative stop, the likelihood of criminal activity required for reasonable suspicion is not as great as that required for probable cause and is less than would be needed to satisfy a preponderance of the evidence standard. United States v. Sokolow, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

An informant's tip may provide the specific and articulable facts required to establish reasonable suspicion. State v. Keith, 978 S.W.2d 861, 866 (Tenn. 1998). Tennessee courts have distinguished "citizen informants" from "criminal informants." State v. Stephens, 989 S.W.2d 290, 291 (Tenn. 1999). A citizen informant acquires his or her information through first-hand experience and acts in the interest of public safety. State v. Luke, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998). Citizen sources are presumed reliable. State v. Melson, 638 S.W.2d 342, 356 (Tenn.1982), *cert. denied*, 459 U.S. 1137, 103 S. Ct. 770, 74 L. Ed. 2d 983 (1983). However, where the informant is from the criminal milieu, application of the two-prong Aguilar-Spinelli test is required. State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993).

Reasonable suspicion may be established through less reliable information than is required to demonstrate probable cause. Alabama v. White, 496 U.S. 325, 330, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990); Keith, 978 S.W.2d at 866. Therefore, the two-prong test of reliability for a criminal informant's tip is not as strictly applied if the tip is being used to show reasonable suspicion for an investigatory stop rather than probable cause for a search and seizure. Keith, 978 S.W.2d at 866.

In the case at bar, the informant was Paul Boberhouser, an EMT and former roommate of Officer Bond. Boberhouser followed the defendant's car and saw it cross the center line several times and hit a mailbox. He reported these events to the dispatcher while following the vehicle and to Officer Bond a short time later. Boberhouser then identified the vehicle in the presence of Officer Bond. Therefore, Boberhouser was not an informant from the criminal milieu; his information is presumed reliable.

We conclude Officer Bond had reasonable suspicion to stop the defendant's vehicle and investigate a possible DUI offense based on the information obtained from Boberhouser. Even though Boberhouser could not identify the defendant as the person who drove the vehicle he followed, Boberhouser positively identified the vehicle. This information established sufficient cause to stop the vehicle.

Regardless of the DUI offense and although not argued by the parties, Officer Bond also had sufficient cause to stop the vehicle based on information from Boberhouser that the vehicle hit a mailbox and left the scene. *See* Tenn. Code Ann. § 55-10-105 ("The driver of any vehicle involved in an accident resulting only in damage to fixtures or other property legally upon or adjacent to a highway . . . or any other premises which are generally frequented by the public at large, shall take reasonable steps to locate and notify the owner or person in charge of such property of such fact . . . ."). Unquestionably, the officer had sufficient cause to stop the vehicle identified to him as the one that hit a mailbox and did not stop. Furthermore, the fact that the officer may not have subjectively thought he could do so, or did not stop the vehicle for this reason, is not determinative. *See* Whren, 517 U.S. at 813; Vineyard, 958 S.W.2d at 736.

Therefore, the traffic stop was valid, and the trial court properly denied the defendant's motion to suppress. We affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE