# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 27, 2009 Session Heard in Cookeville[1]

## STATE OF TENNESSEE v. JERRY LEE HANNING

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Loudon County**
**No. 10914  E. Eugene Eblen, Judge**

---

**No.  E2006-02196-SC-R11-CD - Filed October 20, 2009**

---

This appeal involves the detention and questioning of the driver of a truck tractor and trailer based upon an anonymous tip of reckless driving from a citizen.  A police officer received a dispatch that a caller had reported a black "18-wheeler" bearing a "Smith Brothers" logo was being driven recklessly in a northbound direction on the interstate and had just exited at the Highway 72 ramp. The police officer was in a parking lot very close to the exit ramp at the time he received the call. He responded immediately and observed a black "semi-truck" parked in the emergency lane of the northbound exit ramp.  The officer turned his blue lights on, drove down the ramp, and pulled in front of the truck.  After observing a Smith Transport logo on the door of the truck tractor, questioning the driver, and administering field sobriety tests, the officer arrested the driver for driving under the influence.  The driver entered a conditional guilty plea to driving under the influence and reserved the certified question of whether the warrantless detention and questioning of the driver violated the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Constitution of the State of Tennessee.  We hold that in this case the anonymous tip reporting reckless driving indicated a sufficiently high risk of imminent injury or death to members of the public to warrant immediate intervention by law enforcement officials and justified the brief investigatory stop because the offense was reported at or near the time of its occurrence, and the report indicated that the caller was witnessing an ongoing offense; the report provided a detailed description of the truck, its direction of travel and location; and the investigating officer verified these details within moments of the dispatch reporting the tip.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals**
**Affirmed**

SHARON G. LEE, J., delivered the opinion of the court, in which JANICE M. HOLDER, C.J., CORNELIA A. CLARK, and WILLIAM C. KOCH, JR., JJ., joined.  GARY R. WADE, J. filed a separate concurring opinion.

---

[1] Oral argument was heard in this case on May 27, 2009, in Cookeville, Putnam County, Tennessee, as part of this Court's S.C.A.L.E.S. (**S**upreme **C**ourt **A**dvancing **L**egal **E**ducation for **S**tudents) project.

Wade V. Davies, Knoxville, Tennessee, for the appellant, Jerry Lee Hanning.

Robert E. Cooper, Attorney General and Reporter; Michael E. Moore, Solicitor General; Gordon W. Smith, Associate Solicitor General, for the appellee, State of Tennessee.


**OPINION**

**Facts and Procedural Background**

On November 15, 2003, at approximately 9:30 p.m., Sergeant Kent Russell of the Loudon Police Department received a radio dispatch that an anonymous caller had reported a recklessly driven truck headed north on Interstate 75. The caller identified the vehicle as a black "18-wheeler"[2] with "1-800-GoSmith" or "Go Smith Brothers" on the back and stated that the truck had exited at the Highway 72 exit ramp.

When Sergeant Russell received the dispatch, he was in the parking lot of a McDonald's restaurant located about one hundred and fifty yards from the top of the Highway 72 exit ramp. He immediately drove to the exit ramp where he observed a black truck tractor and trailer with its parking lights on parked in the emergency lane, facing the top of the ramp. Sergeant Russell activated his emergency blue lights, drove his patrol car down the ramp against the flow of traffic, and parked with the front of his vehicle very close to the front of the truck. Sergeant Russell walked up to the truck's door, which was emblazoned with an eagle image and the words "Smith" and "transport," and requested the truck's driver, Jerry Lee Hanning, to step out of the truck. After Mr. Hanning complied with Sergeant Russell's request, Sergeant Russell asked him if he had been drinking, administered various field sobriety tests, arrested him for driving under the influence, and transported him to a hospital for a blood alcohol test.

In October of 2004, the Loudon County grand jury returned an indictment charging Mr. Hanning with driving under the influence ("DUI") in violation of Tennessee Code Annotated section 55-10-401[3] and with possession of an open container of an alcoholic beverage in violation of Tennessee Code Annotated section 55-10-416.[4] Mr. Hanning filed a motion to suppress all evidence obtained as a result of the detention of himself and his vehicle upon the ground that Sergeant Russell

---

[2] We take judicial notice that "18-wheeler" and "semi-truck" are colloquial expressions for a truck tractor and trailer.

[3] "It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state . . . , while: (1) Under the influence of any intoxicant . . . ; or (2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08 %) or more." Tenn. Code Ann. § 55-10-401(a)(1)-(2) (2008).

[4] "No driver shall consume any alcoholic beverage or beer or possess an open container of alcoholic beverage or beer while operating a motor vehicle in this state." Tenn. Code Ann. § 55-10-416(a)(1) (2008).

lacked reasonable suspicion or probable cause and therefore violated the search and seizure provisions of the state and federal constitutions. The trial court denied the motion to suppress.

After the denial of his motion to suppress, Mr. Hanning entered into a conditional plea agreement with the State. In exchange for a conditional plea of guilty to the DUI charge, the open container charge was dismissed, and he was sentenced to eleven months, twenty-nine days incarceration, suspended upon his service of three days in jail and payment of fines and costs. This plea reserved and certified for appeal the question presented in the motion to suppress of "whether the warrantless questioning and detention of Mr. Hanning violated the Fourth Amendment to the United States Constitution and Article I, Section 7 of the Constitution of the State of Tennessee." This question was certified for appeal pursuant to Rule 37(b)(2) of the Tennessee Rules of Criminal Procedure[5] by order of the trial court.

The Court of Criminal Appeals affirmed the trial court's denial of the motion to suppress and found that Sergeant Russell had reasonable suspicion that the truck was the same one that the caller had identified as being driven recklessly, based upon the facts that when Sergeant Russell received the dispatch he was in close proximity to the specified exit ramp, he immediately proceeded to the ramp, and found a black truck tractor and trailer sitting as if it had exited I-75, as stated by the caller. The Court of Criminal Appeals further found that, based upon Sergeant Russell's reasonable suspicion that Mr. Hanning had been driving recklessly, he properly questioned Mr. Hanning and administered field sobriety tests. Based on the results of these actions, the Court of Criminal Appeals also found that the officer had probable cause to arrest Mr. Hanning for driving under the influence. We granted Mr. Hanning's application for permission to appeal.

**Analysis**

As noted, the certified question reserved for appeal was "whether the warrantless questioning and detention of Mr. Hanning violated the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Constitution of the State of Tennessee." We determine that under the facts of this case, the warrantless detention was valid because it was supported by reasonable suspicion that Mr. Hanning had committed a crime.

Although this case comes to us on appeal as a certified question of law under Tenn. R. Crim. P. 37(b)(2), we review it under the same standard as an appeal from a judgment denying a motion to suppress. See State v. Nicholson, 188 S.W.3d 649, 656 (Tenn. 2006). The "trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise." State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). Furthermore, although "[t]he party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing

---

[5] Tenn. R. Crim. P. 37 (b)(2)(A)(i) provides that a defendant in a criminal proceeding may appeal from any judgment of conviction "on a plea of guilty . . . if . . . the judgment of conviction or other document to which such judgment refers that is filed before the notice of appeal, contains a statement of the certified question of law that the defendant reserved for appellate review."

3

as well as all reasonable and legitimate inferences that may be drawn from that evidence," id., the burden remains on the State to prove that a warrantless search was constitutionally permissible. Nicholson, 188 S.W.3d at 656-57; State v. Henning, 975 S.W.2d 290, 298 (Tenn. 1998). We review questions of law de novo. State v. Day, 263 S.W.3d 891, 900 (Tenn. 2008).

The Fourth Amendment to the Constitution of the United States, applicable to the states through the Fourteenth Amendment as recognized in Mapp v. Ohio, 367 U.S. 643, 650 (1961), provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Similarly, Article I, Section 7 of the Tennessee Constitution provides:

> That the people shall be secure in their persons, houses, papers and possessions, from unreasonable searches and seizures; and that general warrants, whereby an officer may be commanded to search suspected places, without evidence of the fact committed, or to seize any person or persons not named, whose offences are not particularly described and supported by evidence, are dangerous to liberty and ought not to be granted.

Three categories of police-citizen interaction have been judicially designated: (1) full-scale arrest, which must be supported by probable cause, see Brown v. Illinois, 422 U.S. 590, 598 (1975); State v. Ferrante, 269 S.W.3d 908, 913 (Tenn. 2008); (2) brief investigatory detention, which must be supported by reasonable suspicion of criminal activity, see Terry v. Ohio, 392 U.S. 1, 27 (1968); State v. Williams, 185 S.W.3d 311, 315 (Tenn. 2006); and (3) brief police-citizen encounter that requires no objective justification, see Florida v. Bostick, 501 U.S. 429, 434 (1991); State v. Daniel, 12 S.W.3d 420, 424 (Tenn. 2000). The case before us involves a brief investigatory detention, and accordingly, we must determine whether at the time Mr. Hanning was detained, Sergeant Russell had a reasonable suspicion that Mr. Hanning had committed a crime.

We have previously noted that a seizure or detention occurs when "'in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Williams, 185 S.W.3d at 316 (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Ordinarily, when an officer turns on his blue lights, the officer has initiated a detention. See State v. Pulley, 863 S.W.2d 29, 30 (Tenn. 1993). However, in some instances, an officer's activation of his or her emergency blue lights will not constitute a detention, such as when the officer turns on the emergency lights for reasons of safety. See Williams, 185 S.W.3d at 318. While it is arguable that Sergeant Russell initially activated his blue lights as a safety measure, given that he was driving down the exit ramp against the flow of traffic, the parties have agreed that Mr. Hanning

and his truck were detained when, with its blue lights flashing, Sergeant Russell pulled his patrol car very close to the front of Mr. Hanning's truck. A reasonable person in Mr. Hanning's place would have believed he was not free to leave when the patrol car was parked in front of the truck, blocking its exit.

Having established the moment of detention, we must next determine whether the detention was justified by reasonable suspicion of criminal activity. In determining whether an investigatory detention is based upon reasonable suspicion, we engage in a "fact-intensive and objective analysis," reviewing the record for "specific and articulable facts, that the defendant had committed, or was about to commit, a criminal offense." See id. at 318-19. Reasonable suspicion must be supported by something more than the officer's "inchoate and unparticularized suspicion or 'hunch.'" Day, 263 S.W.3d at 902 (quoting Terry, 392 U.S. at 27). However, "'reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause'" and "can arise from information that is less reliable than that required to show probable cause." Id. at 903 (quoting Pulley, 863 S.W.2d at 32).

When information is received from an anonymous informant, as occurred in the instant matter, there is an enhanced concern as to whether the information is reliable or whether it was fabricated. State v. Wilhoit, 962 S.W.2d 482, 487 (Tenn. Crim. App. 1997). Thus, in order to ensure reliability, before a motor vehicle can be validly detained based upon information received from an anonymous informant, there must be a showing of both 1) the basis of the informant's knowledge of the conveyed information and 2) the informant's credibility. Day, 263 S.W.3d at 903 (citing Pulley, 863 S.W.2d at 31). The difficulty in utilizing this two-prong test to assess the reliability of a tip received from an informant whose identity is unknown is readily apparent. However, any deficiencies in demonstrating reliability based upon this test can be cured by an investigating officer's independent corroboration of the anonymously provided information. Wilhoit, 962 S.W.2d at 487.

In the case before us, we first consider whether the basis of the caller's knowledge and the caller's credibility were established in accord with the two-prong test for reliability. While the record does not show the caller's basis of knowledge, we have noted that "[w]hen an informant reports an incident at or near the time of its occurrence, a court can often assume that the report is first-hand, and hence reliable." Pulley, 863 S.W.2d at 32. We have further held that this contemporaneity of the caller's observation and the call, coupled with an officer's verification of details of the caller's observations shortly after receiving the call, can be sufficient to satisfy the basis of knowledge prong of our inquiry. Wilhoit, 962 S.W.2d at 487-88. In this case, the anonymous caller reported that a black "18-wheeler" was being driven recklessly on the interstate and had taken the Highway 72 exit. The call suggested that the caller was reporting the reckless driving as it occurred. Within mere minutes of receiving the dispatch, Sergeant Russell confirmed that there was a truck matching the general description given by the caller at the location described by the caller. The confirmation of this information in close proximity to its receipt was sufficient to demonstrate the caller's basis of knowledge. See id. at 488.

While the anonymity of the caller precluded direct verification of the caller's credibility, Sergeant Russell's independent corroboration of certain details provided by the caller, specifically the type of vehicle (truck tractor and trailer), its color (black), its location (Highway 72 exit ramp), and its direction of travel (northbound), was sufficient to satisfy the credibility prong of the reliability inquiry.[6]  See id.  Furthermore, when Sergeant Russell observed the truck, it was parked in the emergency lane of the exit ramp.  While this was not a statutory offense at the time,[7] it was a sufficiently unusual circumstance to arouse Sergeant Russell's suspicion that the truck was the one reported by the caller as having been driven recklessly.

Mr. Hanning asserts that Sergeant Russell did not personally observe the truck being driven recklessly and, citing Florida v. J.L., 529 U.S. 266 (2000), argues that Sergeant Russell's corroboration of details observable or available to anyone did not establish reasonable suspicion. In Florida v. J.L., the United States Supreme Court held that an anonymous caller's report that a suspect at a specific bus stop was carrying a concealed gun did not create reasonable suspicion sufficient to justify the suspect being stopped and frisked by law enforcement officers.  The Court indicated that the anonymous caller's failure to provide predictive information about the subject's future movements left the police without any means to confirm that the informant had inside knowledge about the subject that would have lent credibility to the caller's charge that the defendant was engaged in criminal activity.  529 U.S. at 272.  We find the circumstances of the instant case to be distinguishable from the facts in Florida v. J.L. in several ways.

First, a report of readily observable evidence of reckless driving carries a higher degree of inherent reliability than does a report of a concealed weapon.  The basis of the tipster's knowledge is apparent when the reported criminal activity is open to observation by the general public, whereas the basis of the tipster's knowledge of a concealed crime is unknown, absent proof of inside information supporting the allegation.  See Bloomingdale v. State, 842 A.2d 1212, 1219 (Del. 2004).  Furthermore, when a tipster seeks to report the location of a reckless driver at the time the reckless driving is observed or shortly thereafter, the tipster has a very brief amount of time to contact the police, and the likelihood that the allegation is fabricated is proportionately diminished.  See id. at

___

[6] As noted, the caller also described the truck as having "1-800-GoSmith" or "Go Smith Brothers" on the back.  While Sergeant Russell observed the words "Smith" and "transport" on the door of Mr. Hanning's truck, he did not make this observation until *after* the detention was complete, and therefore corroboration of this aspect of the information provided by the caller could not provide further justification for the investigatory stop.

[7] Effective April 7, 2008, subsection (c) was added to Tennessee Code Annotated section 55-8-158 and provides in pertinent part as follows:

> [N]o person shall stop, park or leave any motor vehicle, whether attended or unattended, upon the paved or unpaved portions of any entrance or exit ramp of any highway; provided, that a driver of a motor vehicle that has become disabled may leave the vehicle on an entrance or exit ramp until such time as the disabled motor vehicle can be repaired or towed, as long as the vehicle is not obstructing the passage of other motor vehicles.  Furthermore, the department may take into consideration an emergency situation or compliance with federal laws. Tenn. Code Ann. § 55-8-158(c) (2008).

1220. By contrast, a tipster reporting a concealed weapon is not subject to such time restrictions. And finally, the relatively limited amount of time available to report the location of a moving vehicle also diminishes the possibility that the tip merely constitutes an attempt by the tipster to employ law enforcement officials for the purpose of harassment. See id. Logistically, but for the corroboration requirements imposed by the Court in Florida v. J.L., it would be a simple matter to fabricate a report of a concealed weapon that would expose an individual to a stop and frisk. However, in order to use the police for harassment by falsely reporting that an individual is driving recklessly, the tipster would be required to know not only that the person he seeks to harass is driving a particular vehicle at a specific time and location, but also that at the time the report is made, an officer will be in close enough proximity to the subject to promptly execute a stop of the vehicle. Given the intricacies and improbabilities that would be involved in seeking to harass another by a report of reckless or erratic driving, it seems highly unlikely that such a report will have been fabricated for that purpose. See Bloomingdale, 842 A.2d at 1220 (concluding that, because reporting erratic driving "is such an intricate, improbable, and imprecise method of harassing another," the risk of a tip being falsified by an informant is "significantly reduced").

Second, the level of intrusion presented by the actions of law enforcement officials in the two cases is different. In Florida v.J.L., the stop and frisk conducted by the officers in the federal case entailed physical contact between the officers and the suspect, whereas the intervention in this case initially amounted to a brief detention and did not entail physical contact between Sergeant Russell and Mr. Hanning. See State v. Boyea, 765 A.2d 862, 868 (Vt. 2000) (recognizing that the liberty interest at stake in a brief motor vehicle stop does not rise to the level that confronted the Court in Florida v. J.L.); see also United States v. Wheat, 278 F.3d 722, 737 (8th Cir. 2001) (stating that investigatory stop of motor vehicle is "considerably less invasive, both physically and psychologically, than the frisk on a public corner that was at issue in [Florida v.] J.L.").

Finally, and most importantly, the degree of danger and urgency for immediate action that confronted the officers in Florida v. J.L. was much lower than that confronting Sergeant Russell in this case. A report that a vehicle is being driven recklessly or erratically suggests that the driver may be under the influence of alcohol or drugs, see State v. Rutzinski, 623 N.W.2d 516, 526 (Wis. 2001) ("Erratic driving is one possible sign of intoxicated use of a motor vehicle."), fatigued, or in physical distress and therefore incapable of controlling his or her vehicle. While a concealed weapon does not of itself present an imminent danger of harm to the public, a truck driven recklessly does present such a danger. Although the truck was parked at the moment it was located by Sergeant Russell, it could have been moving and back on the interstate in a matter of seconds, and we do not believe that Sergeant Russell was obligated to wait until the truck was back on the interstate and moving to confirm the report of reckless driving. Had he done so, the first indication that the caller's report of reckless driving was correct might well have been a collision between the truck and another vehicle, resulting in injury or death to Mr. Hanning and/or other members of the public. In Florida v. J.L., the Court acknowledged that under some circumstances, such as where a person is reported to be carrying a bomb, the danger alleged by an anonymous caller might be so great that some lesser indicia of reliability would be sufficient to justify a frisk. 529 U.S. at 273-74. A truck tractor and trailer being driven recklessly on the interstate is sufficiently analogous to a bomb to warrant prompt

7

intervention and investigation by law enforcement officials. See Boyea, 765 A.2d at 867 (stating that "a drunk driver is not at all unlike a 'bomb,' and a mobile one at that."); accord Rutzinski, 623 N.W.2d at 526.

Mr. Hanning also relies on State v. Coleman, 791 S.W.2d 504 (Tenn. Crim. App. 1989), in support of his argument that Sergeant Russell lacked reasonable suspicion to justify a detention. In Coleman, an informant advised law enforcement officials that at a specified time, the subject in a car of a particular color, model, and make would be transporting marijuana on Highway 431 to a location on Washington Road in Robertson County. At the time specified by the caller, a deputy located a car matching the description traveling on Highway 431 toward Robertson County. After following the vehicle for a brief time, the deputy initiated a stop, searched the vehicle with the driver's consent, and discovered several pounds of marijuana. The Court of Criminal Appeals held that the stop was invalid because the informant's credibility and basis of knowledge were not sufficiently established by the deputy's independent corroboration of the information provided. In so holding, the Court noted that law enforcement officials failed to make any inquiry as to the driver's identity or her reputation with respect to the use or sale of illegal drugs. Coleman, 791 S.W.2d at 506. We find Coleman to be distinguishable from the present case. In Coleman, although the informant's identity was apparently known, law enforcement officials failed to make any attempt to verify the informant's credibility. Coleman is also distinguishable from the matter now before us in that the criminal activity reported by the caller in that case (transportation of drugs) did not present an imminent threat of harm to the public.

In the wake of the United States Supreme Court's decision in Florida v. J.L. and consistent with our above analysis differentiating that case from the present one, one United States Circuit Court of Appeals and a multitude of state jurisdictions have ruled that an investigatory stop may be initiated on the basis of an anonymous report of erratic, reckless or drunk driving, even without corroboration of any criminal activity by law enforcement officials. See Cottrell v. State, 971 So.2d 735, 745-46 (Ala. Ct. Crim. App. 2006); People v. Wells, 136 P.3d 810, 815-16 (Cal. 2006); Bloomingdale, 842 A.2d at 1219-20; State v. Prendergast, 83 P.3d 714 (Haw. 2004); State v. Walshire, 634 N.W.2d 625, 630 (Iowa 2001); State v. Crawford, 67 P.3d 115, 119-20 (Kan. 2003); State v. Barras, No. 2009 KA 0014, 2009 WL 1717166, at *4-5 (La. App. 1. Cir. June 19, 2009); State v. Sousa, 855 A.2d 1284, 1290 (N.H. 2004); State v. Contreras, 79 P.3d 1111, 1117-18 (N.M. Ct. App. 2003); People v. Jeffery, 2 A.D.3d 1271, 1271 (N.Y. App. Div. 2003); Boyea, 765 A.2d at 868; Wheat, 278 F.3d at 729. We find guidance in all of these cases in reaching a conclusion in the present matter. We are also guided in our decision by specific factors recognized by this Court in State v. Pulley, 863 S.W.2d 29, 33 (Tenn. 1993).

In Pulley, the police received two anonymous reports indicating that a man driving a yellow Ford L.T.D. in a specified trailer park was armed with a shotgun and was "supposed to shoot someone." 863 S.W.2d at 29. The police found the subject in a vehicle matching the description, not at the named trailer park, but parked at a nearby gas station. The investigating officer testified that when he arrived at the gas station, he turned on his blue lights, approached the subject's car, and asked him to step out, at which time he saw a shotgun on the car's floorboard. He arrested the

subject on several charges that included possessing various weapons with the intent to go armed and driving under the influence. Both the trial court and the Court of Criminal Appeals agreed that the weapons and the results of a blood alcohol test should be suppressed, presumably upon grounds that the investigating officer did not have reasonable suspicion of criminal activity to justify the stop. We reversed upon consideration of the following three factors: "'(i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and experience.'" Pulley, 863 S.W.2d at 34 (quoting Mendenhall, 446 U.S. at 561). We determined that 1) the stop served the public's interest in the prevention of violent crime; 2) the scope of what was intended to be a temporary stop was minor; 3) the timely nature of the anonymous report indicating that the caller was an eyewitness verified the caller's basis of knowledge; and 4) the corroboration of many of the details described by the caller "provided some basis to believe the informant was credible." Id. at 34. We concluded that "given the threat of violence, the police had 'specific and articulable facts' to warrant the investigatory stop," id., and we recognized "the need for immediate police action in response to serious threats of harm," stating that the "reliability of the informant's tip is not the only determinant of the reasonableness of the stop. The content of the tip is also a crucial factor and, in particular, the level of danger that the tip reveals," id. at 32.

Although Pulley did not involve a report of reckless driving, we believe that a report of a truck tractor and trailer being driven recklessly on the interstate poses a sufficiently high degree of threat of imminent hazard to warrant prompt investigation by law enforcement officials. With specific reference to the three factors designated in Pulley, we conclude that Sergeant Russell's detention of Mr. Hanning served the public's interest in the prevention of reckless driving; the scope of what was intended to be a temporary stop was minor; and in light of these considerations, the caller's basis of knowledge and credibility were sufficiently corroborated by Sergeant Russell to establish reliability. Taking into account these three factors and bearing in mind the high degree of danger presented by the anonymous tip, we hold that the warrantless detention of Mr. Hanning and his truck were justified upon reasonable suspicion of criminal activity.

As we indicated in Pulley, an officer's action should be evaluated "in light of one's reaction had [the officer] failed to act." Id. at 33. In this case, had Sergeant Russell refrained from detaining Mr. Hanning and allowed him to resume driving, either Mr. Hanning or another member of the public may well have been killed or injured. We emphasize the importance of this consideration in our decision herein. As we have noted above, reckless or erratic driving indicates that the driver may be impaired as the result of an intoxicant. Recent statistics of the National Highway Transportation Safety Administration show that in 2007 approximately 13,000 people were killed by drunk drivers nationally,[8] and the citizens of Tennessee are not exempt from this ongoing tragedy. The imminent danger presented by drunk driving and the public's interest in eliminating this problem are obvious and indisputable.

---

[8] See Nat'l Hwy. Transp. Safety Admin., U.S. Dep't of Transp., DOT HS 811 016, 2007 Traffic Safety Ann. Ass. - Alcohol-Impaired Driving Fatalities (Aug. 2008), available at http://www-nrd.nhtsa.dot.gov/Pubs/811016.pdf (last visited Sept. 14, 2009).

In holding that detention was justified in the present case, we do not intend to imply that the extent of corroboration provided by Sergeant Russell will, as a general matter, be sufficient to establish reliability of anonymously provided information, but only that such degree of corroboration can be sufficient to establish such reliability when independent corroboration of the reported criminal activity is not feasible because there is a high risk of imminent injury or death equivalent to the risk posed by a truck tractor and trailer being recklessly driven on the interstate. Furthermore, we are compelled to emphasize that the content of the tip is of critical significance. Thus, the degree of corroboration that was sufficient to establish reliability in this case may not be sufficient where the nature of the activity reported and any associated imminent danger cannot be reasonably inferred from the information conveyed by the informant. See State v. Day, 263 S.W.3d 891 (Tenn. 2008) (holding that officer lacked reasonable suspicion to stop suspect where stop was based solely on anonymous driver flashing her lights, waving her arms, and pointing at suspect's vehicle).

Having justifiably detained Mr. Hanning based upon reasonable suspicion of criminal activity, Sergeant Russell approached the door of the truck where he observed the Smith logo and properly asked Mr. Hanning to step from the truck. See State v. Berrios, 235 S.W.3d 99, 106 (Tenn. 2007) (citing Pennsylvania v. Mimms, 434 U.S. 106, 109-11 (1977) (holding that once a vehicle has been lawfully detained, an officer may, as a matter of course, order the driver to step out of the vehicle)). Thereafter, Sergeant Russell properly administered field sobriety tests, establishing probable cause to arrest Mr. Hanning for driving under the influence.

In summary, we hold that in this case the anonymous tip reporting reckless driving suggested a sufficiently high risk of imminent injury or death to members of the public to warrant immediate intervention by law enforcement officials and justified the brief investigatory stop by Sergeant Russell because the offense was reported at or near the time of its occurrence, and the report indicated that the caller was witnessing an ongoing offense; the report provided a detailed description of Mr. Hanning's truck, its direction of travel and location; and Sergeant Russell verified these details within moments of the dispatch reporting the tip.

### Conclusion

For the foregoing reasons, on the certified question presented, we hold that Sergeant Russell's warrantless detention of Mr. Hanning and his truck was valid because it was supported by reasonable suspicion that Mr. Hanning had committed or was about to commit a crime. Accordingly, we affirm the judgment of the Court of Criminal Appeals. The costs of this appeal are assessed to Jerry Lee Hanning, and his surety, for which execution may issue if necessary.

_____
SHARON G. LEE, JUSTICE

10