**Frederick J. BLOOMINGDALE,
Defendant Below,
Appellant,**

v.

**STATE of Delaware, Plaintiff
Below, Appellee.**

No. 658,2002.

Supreme Court of Delaware.

Submitted: Aug. 19, 2003.

Decided: Jan. 2, 2004.

F. Phillip Renzulli, Office of the Public Defender, Wilmington, Delaware, for Appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, Delaware, for Appellee.

Before VEASEY, Chief Justice, HOLLAND, STEELE and JACOBS, Justices, and STRINE, Vice Chancellor,[1] constituting the Court en Banc.

VEASEY, Chief Justice.

In this appeal we consider the validity of an investigative stop of an automobile. Following his conviction for driving under the influence, the defendant challenged as unconstitutional the officer's stop of the defendant's vehicle, arguing that the anon- ymous tip that led to the stop was insufficient to create reasonable and articulable suspicion for the stop. The State responded that the defendant had waived that argument by failing to raise it earlier in the proceedings. The State also contends that the stop was valid. We assume without deciding that the defendant did not waive his challenge to the constitutionality of the stop. We hold that the stop was constitutionally valid. We therefore affirm the Superior Court's judgment of conviction.

### Facts

On May 28, 1999, Chief Michael Capriglione of the Newport Police Department was on patrol in Newport, Delaware, when he received a general broadcast of a possible drunk driver "driving all over the roadway" near James Street and Route 141. The broadcast described the make, model, and color of the vehicle, gave the license tag number. The broadcast also identified the driver's race and travel route, but did not identify the source of the information.

Chief Capriglione spotted the vehicle within a few seconds of the broadcast. He followed the car just long enough to confirm the tag number and then stopped the car, driven by the defendant, Frederick Bloomingdale. Chief Capriglione did not observe any erratic driving before making the stop.

Upon stopping Bloomingdale, Chief Capriglione immediately noted that Bloomingdale smelled of alcohol. Bloomingdale admitted he had been drinking. Chief Capriglione also noticed that the interior of the car was littered with trash, including some empty alcohol containers. The officer then administered field sobriety tests. When Bloomingdale did not perform satisfactorily on those tests, Chief Capriglione

---

1. Sitting by designation pursuant to DEL. CONST. art. IV, § 12 and DEL.SUPR. CT. R. 2 & 4.

arrested Bloomingdale and transported him to the police station, where a breath test indicated that Bloomingdale's blood alcohol content was .10, a reading above the legal limit.[2]

Represented by counsel, Bloomingdale was tried in the Court of Common Pleas and convicted of driving under the influence.[3] Bloomingdale failed to challenge the traffic stop before or during the trial.[4] After trial, Bloomingdale filed a motion for reconsideration and/or acquittal, a motion for a new trial and a motion to stay his sentence. He argued in support of those motions that the trial court's ruling that the arresting officer had reasonable and articulable suspicion to stop Bloomingdale based solely on an uncorroborated anonymous tip was contrary to this Court's holding in *Jones v. State.*[5] He also asserted that he had not waived this argument because the police report given to the defense before trial did not provide counsel with a sufficient factual basis on which to file a suppression motion.

While the post-trial motions were pending in the Court of Common Pleas, Bloomingdale filed an appeal to the Superior Court. The parties continued to litigate in the Court of Common Pleas while the Superior Court appeal was pending. The Court of Common Pleas decided the post-trial motions in favor of Bloomingdale, who then withdrew his appeal to the Superior

Court. The State then appealed to the Superior Court the decision of the Court of Common Pleas vacating Bloomingdale's conviction.

In its appeal to the Superior Court, the State contended that: (a) Bloomingdale's initial appeal to the Superior Court divested the Court of Common Pleas of jurisdiction to consider the defendant's post-trial motions; (b) the suppression argument was time barred under Court of Common Pleas Criminal Rule 12(b); and (c) *Jones* did not preclude a finding that the arresting officer in this case had reasonable and articulable suspicion to stop Bloomingdale.

The Superior Court determined that the Court of Common Pleas did not have subject matter jurisdiction once the appeal to the Superior Court was perfected. The Superior Court reversed the trial court's order vacating the conviction and remanded the case for further proceedings. Specifically, the Superior Court found that the record did not indicate that the State had sufficient opportunity to make a full record with regard to the suppression issue. The Superior Court expressed concern that Bloomingdale had not challenged the stop until after the verdict was announced and stated that "allowing the trial court to announce a verdict before challenging the stop smacks of Defendant's maneuvering for advantage."[6] The Superior Court acknowledged, however, that it was not nec-

---

2. *See* DEL.CODE ANN. tit. 21, § 4177(a)(4) (1995) (prohibiting a person from driving an automobile when "the person's alcohol concentration is .10 or more"); *see also Coxe v. State,* 281 A.2d 606, 607 (Del.1971) (holding that to establish guilt of driving under the influence, "the State must prove only that the defendant was in physical control of the vehicle, and that a proper and timely test showed the required percentage of alcohol concentrated in the defendant's system").

3. DEL.CODE ANN. tit. 21, § 4177 (1995 & Supp. 2002).

4. Bloomingdale's counsel did argue during closing that Chief Capriglione had not had "probable cause" to stop the vehicle. The Court of Common Pleas held that the general broadcast was sufficient to validate the stop.

5. 745 A.2d 856 (Del.1999).

6. *State v. Bloomingdale,* C.A. No. IN–9906013775, 2001 WL 845758, at *3, 2001 Del.Super. LEXIS 261, at *9 (Del.Super. July 17, 2001).

essarily an abuse of discretion for the Court of Common Pleas to consider a suppression motion after the verdict. The Superior Court indicated that the Court of Common Pleas could choose on remand whether or not to revisit the issue.

On remand, the Court of Common Pleas interpreted the Superior Court's opinion as holding that the suppression matter was untimely, reversed its original order and resentenced Bloomingdale. Bloomingdale once again appealed to the Superior Court, arguing that the Court of Common Pleas had misinterpreted the Superior Court's remand order, and again asserted that the stop was unconstitutional.

The Superior Court assumed, without deciding, that the trial court's original willingness to consider the post-trial suppression motion was not an abuse of discretion. The Superior Court, therefore, proceeded to consider the merits of Bloomingdale's challenge to the constitutionality of the investigatory stop. In a thorough and carefully-reasoned decision, the court affirmed Bloomingdale's conviction, holding that an anonymous tip reporting an erratic driver provided reasonable suspicion to stop Bloomingdale's car.

### Issues on Appeal

Bloomingdale challenges the investigatory stop of his vehicle as unsupported by reasonable and articulable suspicion and, therefore, he argues that the stop is invalid under the United States and Delaware Constitutions. He contends that the anonymous tip on which the stop was based could not itself create reasonable and ar-

ticulable suspicion because Chief Capriglione did not himself observe any erratic driving or any other objective evidence that Bloomingdale was driving under the influence before stopping Bloomingdale's car. The State contends that the stop was valid and that Bloomingdale waived his suppression argument by presenting it too late in the proceedings.

Whether the police officer possessed a reasonable and articulable suspicion before detaining Bloomingdale is a mixed issue of law and fact.[7] In this case there are no significant disputes over the factual issues. Therefore, we review de novo the decision of the Superior Court to determine if there was error in the formulation and application of the law.[8]

### Waiver

The State's waiver contention is that Bloomingdale did not fairly raise his suppression argument until after he was tried, convicted, and sentenced. The State argues that motions to suppress evidence must be raised before trial[9] in order to protect the State's right to appeal any suppression order and then, if successful on appeal, try the defendant on the merits without confronting double jeopardy concerns. The State further argues that failure to raise such a motion before trial constitutes waiver of the issue, unless the court for cause grants relief from the waiver.[10]

Bloomingdale argues that he demonstrated good cause for raising the suppression issue post-trial. He asserts that the police report supplied by the State during

---

7. *Flonnory v. State*, 805 A.2d 854, 857 (Del. 2001).

8. *Id.*

9. *See* DEL. CT. C.P.CRIM. R. 12(b)(3) (including motions to suppress evidence among motions that must be raised before trial); *Mays v.*

*State*, No. 391,2002, 2003 WL 231615, ¶ 31, 2003 Del. LEXIS 65, ¶ 31 (Del. Jan. 31, 2003) (ORDER) ("Motions to suppress evidence must be raised prior to trial.").

10. DEL. CT. C.P.CRIM. R. 12(f).

discovery did not put him on notice of any potential suppression issues [11] and that he could not have been aware of the suppression issue until Chief Capriglione testified at trial. Bloomingdale therefore contends that the trial court did not err by ruling that he had not waived his suppression argument by failing to raise it before trial.

 Because we hold that the stop was valid in any event, we assume, without deciding, that the Superior Court did not err by upholding the trial court's original order ruling that Bloomingdale had not waived the suppression issue. A trial court has broad discretion to enforce its rules of procedure,[12] and the trial court here exercised its discretion in a manner that did not abuse its discretion. We note, however, that the trial court, at minimum, should have afforded the State the opportunity for an evidentiary hearing, given the defendant's failure to make a timely objection. Although the trial court's indulgence of the defendant's tardy objection is perhaps understandable under these particular circumstances, its failure to accord the State the chance to make a record is not justifiable. Nevertheless, the point is moot for purposes of this appeal.

It is true, as the State argues, that competent defense counsel should recognize that a suppression issue is frequently encountered where evidence was obtained as a result of a *Terry* [13] stop. Nevertheless, in this case the State has not demonstrated that Bloomingdale's counsel knowingly relinquished his right to challenge the stop based on all relevant information. Bloomingdale's argument that the suppression issue did not become clear until Chief Capriglione testified at trial is at least plausible.

The circumstances of this case may be unique, so it seems to us prudent that this case should not be viewed as a precedent on the waiver issue. We do not wish to condone a practice of post-trial motions to suppress, and we note that there may be circumstances when such a delay may well constitute a waiver. The mere fact that a defendant's arrest occurred following a *Terry* stop should prompt defense counsel seasonably to seek all available information about the stop, including the precise details of the tip that was received, the steps the law enforcement officers took in response to the tip and any additional information gleaned by police before effectuating the stop.

### Reasonable Suspicion Based on Anonymous Tips

 We now turn to the merits. We have concluded that the stop was permissible because the tip at issue in this case had sufficient indicia of reliability to give rise to reasonable suspicion.

An individual's right to be free from unreasonable searches and seizures is secured in Delaware by both the Fourth Amendment to the United States Constitution [14] and Article I, Section 6 of the Delaware Constitution.[15] In *Terry v. Ohio*, the

---

**11.** The report simply stated, "General broadcast of defendant and his vehicle put out on radio by passerby."

**12.** *Barnett v. State*, 691 A.2d 614, 616 (Del. 1997).

**13.** *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (authorizing brief investigatory stops by law enforcement

officers based on reasonable suspicion of criminal activity).

**14.** *See* U.S. CONST. amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated....").

**15.** *See* DEL. CONST. art. I, § 6 ("The people shall be secure in their persons, houses, pa-

United States Supreme Court held that a law enforcement officer may conduct a brief, investigatory seizure of an individual based on the officer's reasonable and articulable suspicion that criminal activity is afoot.[16]

An officer's suspicion of criminal activity must be based on an adequate quantity of information of sufficient quality to create a reasonable and articulable suspicion that a crime has occurred, is occurring, or is about to occur. Therefore, when an officer's suspicion is aroused by an anonymous tip, whether that "tip suffices to give rise to reasonable suspicion depends on both the quantity of the information it conveys as well as the quality ... of that information, viewed under the totality of the circumstances."[17] With respect to the quality of the information, the key issue is the degree of the reliability of that information.

Bloomingdale asserts that the anonymous tip in the present case was not sufficiently reliable to give rise to reasonable suspicion because it conveyed only readily observable facts and did not demonstrate the basis of the informant's knowledge that Bloomingdale was engaged in criminal activity. In *Florida v. J.L.*,[18] the United States Supreme Court held that an anonymous tip that "a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun"[19] was not sufficiently reliable to justify a *Terry* stop

and frisk of that individual. The Court stated that a tip that merely describes readily observable facts about a subject does not demonstrate that the informant has knowledge of concealed criminal activity.[20] It held that the reasonable suspicion standard "requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person."[21] The Court rejected the argument that the dangerousness of firearms justified a reduced standard for the reliability of tips about firearms.[22]

This Court also has held that certain anonymous tips lacked the requisite indicia of reliability to justify an investigatory stop. In *Jones v. State*, the police received an anonymous 911 call reporting that a "suspicious black male wearing a blue coat" had been standing in a particular location for some time.[23] An officer responded and within a few minutes of the initial call observed a man fitting the description standing with a companion in a nearby location.[24] The man in the blue coat, Jones, had his hands in his pockets. The officer approached Jones and ordered him to stop and remove his hands from his pockets.[25] Jones began walking away from the officer, who repeated his order and then grabbed Jones' hands in an attempt to remove them from the pockets. Jones then threw an object over the officer's head. After a struggle, the officer subdued Jones and recovered the object,

pers and possessions, from unreasonable searches and seizures....").

16. 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

17. *United States v. Wheat*, 278 F.3d 722, 726 (8th Cir.2001).

18. 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

19. *Id.* at 268, 120 S.Ct. 1375.

20. *Id.* at 272, 120 S.Ct. 1375.

21. *Id.*

22. *Id.* at 272–73, 120 S.Ct. 1375.

23. 745 A.2d 856, 858 (Del.1999).

24. *Id.*

25. *Id.* at 859.

which contained cocaine.[26] In the criminal proceedings against him, Jones sought to suppress the evidence seized during his encounter with police, arguing that the officer lacked reasonable suspicion to stop him. We held that the anonymous 911 complaint did not furnish the officer with reasonable suspicion to stop Jones because the 911 complaint reported readily observable facts, the officer had not made any observations that added anything to those facts and there was no incriminating information in the anonymous tip.[27] Therefore, the stop was held to be invalid, and the evidence stemming from the stop was inadmissible. The defendant's conviction and sentence were reversed.

The case before us is distinguishable from both *J.L.* and *Jones.* In Bloomingdale's case, the Superior Court followed the holding of the Vermont Supreme Court in *State v. Boyea.*[28] In *Boyea,* a defendant challenged her driving under the influence conviction on the basis that the arresting officer lacked reasonable suspicion to stop her because nothing he observed while following her vehicle for a mile and a half confirmed an anonymous report that she had been driving erratically.[29] The police had received a report from an anonymous caller reporting that "a blue-purple Volks-wagen Jetta with New York plates, traveling south on I–89 in between Exits 10 and 11[was] operating erratically."[30] An officer located the vehicle just north of Exit 10, followed it for about a mile and a half, and then pulled it over. After observing indications that the driver was indeed intoxicated, the officer arrested her for driving under the influence.[31]

The Vermont Supreme Court upheld Boyea's driving under the influence conviction. The court found the tip in *Boyea* more reliable and predictive[32] than the "bare-bones description" provided in the tip in *J.L.* The court stated that in *Boyea* "the informant described with particularity, and accurately predicted, the location of a fast moving vehicle on a freeway, information which the officer confirmed within minutes of the call." The court also deemed a traffic stop to impose a smaller intrusion on individual liberty than does a search and seizure of an individual's person.[33] The court weighed the risk of harm arising from a failure to stop the individual driving erratically against the decreased level of intrusiveness of a traffic stop and held that the risk of harm outweighed the risk to individual liberty. The court thus held that the stop was constitutionally valid.[34]

---

26. *Id.*

27. *Id.* at 869–70; *see also Flonnory v. State,* 805 A.2d 854, 858 (Del.2001) (holding that where law enforcement officers received an anonymous tip describing the location and appearance of a person who purportedly possessed an illegal substance, "the simply confirmation of readily observable facts does not enhance the reliability of an anonymous tip to the level required for a finding of reasonable suspicion").

28. 171 Vt. 401, 765 A.2d 862 (Vt.2000).

29. *Id.* at 863.

30. *Id.*

31. *Id.*

32. The U.S. Supreme Court has held that an anonymous tip with predictive qualities may create reasonable suspicion because it indicates inside knowledge of a suspect's criminal activities. *E.g., Alabama v. White,* 496 U.S. 325, 331–32, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990).

33. *Boyea,* 765 A.2d at 868.

34. The *Boyea* court also emphasized the severe risk to public safety posed by intoxicated drivers. This is a valid concern, but we choose to predicate our decision primarily on the erratic driving report, the reliability of the informant's information and the minimal in-

In the present case, Chief Capriglione stopped Bloomingdale's vehicle on the basis of an anonymous tip containing specific details identifying the vehicle and its location and reporting that the driver was operating the vehicle "all over the roadway." Chief Capriglione corroborated all the factual allegations except that pertaining specifically to the alleged criminal activity. Because Chief Capriglione did not himself observe any moving violations, we must decide whether the tip contained sufficient indicia of reliability to support a stop on the basis of the tip alone.[35] We conclude that the tip was sufficiently reliable to justify an investigatory stop.

The anonymous tips that have been held to be insufficiently reliable to create reasonable suspicion have related largely to concealed, possessory crimes. In *J.L.* the tipster said the suspect had a concealed gun. In *Jones*, there was no such allegation–only the description of the subject as "suspicious." Accordingly, the courts considering the reliability of those tips found them to be insufficient to demonstrate the basis of the tipsters' knowledge of concealed criminal activities.[36] We find that an anonymous report of contemporaneously-observed erratic driving does not suffer from the same lack of indicia of reliability.

A tip reporting erratic driving is more reliable than one reporting a concealed, possessory offense because the offense is carried out in public and may be observed by any passerby. Unlike a concealed crime, a tipster reporting erratic driving requires no inside information or special basis of knowledge for her conclusion that criminal activity is occurring. Justice Skoglund, concurring in *Boyea*, emphasized this distinction,[37] and other courts have acknowledged it as well. In *Wheat*, the United States Court of Appeals for the Eighth Circuit distinguished on this basis gun possession offenses from driving under the influence cases.[38] There, the

---

trusion on individual liberty posed by the traffic stop in the case before us.

**35.** *Cf. United States v. Wheat*, 278 F.3d 722, 729 (8th Cir.2001) ("The question we now face is whether, in light of *J.L.*, an anonymous tip about the dangerous operation of a vehicle whose innocent details are accurately described may still possess sufficient indicia of reliability to justify an investigatory stop by a law enforcement officer who does not personally observe any erratic driving.").

**36.** *See, e.g., Florida v. J.L.*, 529 U.S. 266, 272, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (observing, in a weapons possession case, that a tip reporting "a subject's readily observable location and appearance .... does not show that the tipster has knowledge of concealed criminal activity"); *Flonnory v. State*, 805 A.2d 854, 859 (Del.2001) (finding, in a drug possession case, that a tip "provided the police with only a description of the suspects and gave no other information that would have indicated to the officers that the informant possessed an inside knowledge of illegality"); *Jones v. State*, 745 A.2d 856, 870 (Del.1999) (opining, in a cocaine possession and trafficking case, that an anonymous tipster's "subjective belief that another person is 'suspicious,' without more, fails to raise a reasonable and articulable suspicion of criminal activity"). *Cf. State v. Boyea*, 171 Vt. 401, 765 A.2d 862, 874–75 (Vt.2000) (Skoglund, J., concurring) (describing what Justice Skoglund believes "has been the dominant and determinative factor in the [U.S. Supreme] Court's development of Fourth Amendment search and seizure law–the unrelenting extension of the principles of *Terry* to cases where the suspected illegal activity is a possessory offense," and distinguishing drunk driving cases because of the readily observable nature of the crime).

**37.** *Boyea*, 765 A.2d at 874–75 (Skoglund, J., concurring).

**38.** *See Wheat*, 278 F.3d at 734, 736 ("[The U.S. Supreme Court's] emphasis on the predictive aspects of an anonymous tip may be less applicable to tips purporting to describe contemporaneous, readily observable criminal actions.").

Court relied on a decision of the Iowa Supreme Court in which that court found that a tip about erratic driving inherently demonstrates the basis of the tipster's knowledge because the tip describes "not concealed criminal activity, as in *J.L.*, but rather 'illegality open to public observation.'" [39] We agree that a tip about readily observable evidence of criminal activity, such as erratic driving, is inherently more reliable than a tip about concealed criminal activity. Because the basis of the tipster's knowledge is apparent where the criminal activity is readily observable to other motorists or pedestrians,[40] its reliability is increased.

Tips reporting erratic driving [41] also may be more reliable because they usually will be made close in time to when the tipster observes the potential criminal activity. "[I]n our common law contemporaneous accounts of situations have long been regarded as especially credible...." [42] This favorable treatment of such contemporaneous accounts does not require that the witness be identified.[43] It is unlikely that the tipster reporting Bloomingdale's erratic driving would have had time to fabricate the unsafe driving element of the report given the short time available to contact the police and report the location of the moving vehicle. The contemporaneity of the report should permit the police officer to assess the truthfulness of the lone unverified element of the tip (that the car was being driven erratically).

A tip relating to a driver who is driving erratically is less likely to involve a malicious tipster attempting to subject someone he dislikes to a police search than are tips of other varieties. The short period of time available to a tipster to notify the police accurately of the location of a moving vehicle suggests that the citizen reporting the driver is likely on the road herself and trying rapidly to report an imminently dangerous situation. For example, it would be a very imprecise method of accomplishing harassment to report the subject as a driver who might be driving erratically, as contrasted with reporting activities that would result in a frisk or search of the person. Automobiles can travel at high rates of speed and change direction rapidly. To harass someone by reporting him as an erratic driver would at least require knowledge that the person is driving a specific vehicle, at a particular time, and in a discrete area. A police officer must then be near that location at the same time and promptly respond to the report by pulling over the vehicle. Because this is such an intricate, improbable, and imprecise method of harassing another, the risk that an anonymous tip of erratic driving has been submitted by a malicious, false informant becomes significantly reduced.

**39.** *Id.* at 730 (quoting *State v. Walshire*, 634 N.W.2d 625, 627 (Iowa 2001)).

**40.** *See id.* at 734 ("Unlike with clandestine crimes such as possessory offenses ... where corroboration of the predictive elements of a tip may be the only means of ascertaining the informant's basis of knowledge, in erratic driving cases the basis of the tipster's knowledge is likely to be apparent. Almost always, it comes from his eyewitness observations, and there is no need to verify that he possesses inside information.").

**41.** We do not place weight on the potential cause of erratic driving, which are numerous. Only rarely will the tipster perceive actual drinking while driving. What the tipster can perceive is unsafe driving.

**42.** *Wheat,* 278 F.3d at 736 n. 11.

**43.** *Id.* (citing Jon R. Waltz, *The Present Sense Impression Exception to the Rule Against Hearsay: Origins and Attributes,* 66 Iowa L.Rev. 869, 877–78 (1981)).

The greater mobility of automobiles also increases the reliability attributed to the tip by its readily observable, descriptive details. It would be difficult for a tipster accurately to place a moving vehicle in a particular location at a specific time if the tipster has not immediately observed that vehicle. An officer therefore should be permitted to give greater credence to an anonymous report of unsafe driving when it is supported by: (a) the precise description of the vehicle; and (b) the officer's corroboration of the descriptive features of the vehicle and the location of its travel in close temporal proximity to when the report was made.[44]

Finally, when deciding whether an anonymous tip of erratic driving provided reasonable suspicion to stop a vehicle, courts should balance the government's interest in responding immediately to reports of unsafe driving against the comparatively modest intrusion on individual liberty that a traffic stop entails. An erratic driver poses a potentially imminent threat of harm to the public.[45] Unlike cases involving possessory offenses where courts have rejected dangerousness exceptions to the reliability requirement,[46] police officers confronted with an erratic driver have limited options for investigating the tip, short of stopping the vehicle. If the officer must follow the vehicle to corroborate the allegation of erratic driving, the officer risks observing the vehicle actually cause an accident.[47] Investigation of a different charge not involving a moving vehicle, however, could be accomplished by less invasive means, such as initiating a consensual encounter or quiet observation, and without creating such a high risk of imminent harm.[48]

The great risk of harm and few investigatory options in erratic driving cases outweigh the relatively less invasive nature of a traffic stop as compared with a public body frisk. Numerous courts have recognized the comparatively less intrusive nature of a traffic stop.[49] Given this balance, law enforcement officers should be permitted to draw all reasonable inferences from

44. The widespread availability and use of call identification technology may also reduce the risk that an anonymous tipster is acting maliciously. Because of such technology's accessibility, most potential tipsters are likely to know that their identities may be discernible by police, even if not disclosed by the tipster. Potential tipsters are therefore less likely to give false tips, for fear of being prosecuted for giving false reports to police. *See Florida v. J.L.*, 529 U.S. 266, 276, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) (Kennedy, J., concurring) (noting the widespread availability of instant caller identification to police and concluding that it may lend reliability to an anonymous tip that may have been deemed unreliable before the advent of such technology).

45. *State v. Boyea*, 171 Vt. 401, 765 A.2d 862, 868 (Vt.2000); *State v. Rutzinski*, 241 Wis.2d 729, 623 N.W.2d 516, 526 (Wis.2001).

46. *E.g. J.L.*, 529 U.S. at 272–73, 120 S.Ct. 1375.

47. *See Boyea*, 765 A.2d at 862 (describing three alternative "endings" to an officer's attempt to corroborate an erratic driving tip by following the vehicle).

48. *Wheat*, 278 F.3d at 736–37.

49. *See, e.g., Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 451, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) (depicting the intrusion on motorists' liberty when stopped at a sobriety checkpoint as "slight"); *Wheat*, 278 F.3d at 737 ("[W]e think that such [traffic stops based on anonymous tips of drunk driving] are considerably less invasive, both physically and psychologically, than the frisk on a public corner that was at issue in *J.L.*"); *Boyea*, 765 A.2d at 868 (contrasting "the police search and seizure of the person in *J.L.*" with the comparatively minor intrusion in DUI cases, "consist[ing] of a simple motor vehicle stop, 'a temporary and brief detention that is exposed to public view'" (quoting *State v. Zumbo*, 157 Vt. 589, 601 A.2d 986, 988 (1991))).

a contemporaneous report of erratic driving that by its nature tends to lend reliability to the report. One of those inferences will frequently be the conclusion that the tipster has knowledge of the criminal activity because she has observed its effects first-hand.

To support reasonable suspicion for a *Terry* stop, anonymous tips normally should provide sufficient information, such as an accurate description of the vehicle, its license tag number, its location and direction of travel, or other details, to enable the officer to be certain she has identified the correct vehicle. In addition, if the time period between the receipt of the tip and the officer's location of the vehicle is brief, the information's reliability is enhanced. The tip also must provide sufficient information to support the inference that the informant has actually witnessed a traffic violation that warrants an immediate stop.[50]

Here, once Bloomingdale stopped his car, Chief Capriglione quickly developed reasonable suspicion supporting his administration of sobriety tests. He smelled alcohol emanating from the vehicle, he observed empty alcohol containers in the car, and Bloomingdale admitted that he had been drinking. Because the initial stop was based on a tip that provided a sufficient quality and quantity of information to give rise to reasonable suspicion, the police stop was valid.

### Conclusion

Our holding today permits an officer to make an initial, brief, investigatory stop based on an anonymous tip of erratic driving, if the tip has the indicia of reliability discussed here. It does not mean that the officer can go further and require a sobriety test in the absence of additional evidence that provides a reasonable basis for that action. It simply means that the officer ought to be able to make a brief stop to inquire about the driver's fitness to operate a vehicle, given the public interest in ensuring that unsafe drivers be taken off the road promptly. Accordingly, the judgment of the Superior Court is **AFFIRMED**.

---

**50.** *Cf. Wheat,* 278 F.3d at 732 (providing examples).