IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | : | |
| | : | |
| v. | : | |
| | : | |
| BRANDON SATCHELL | : | ID No. 1708016599 |
| | : | |
| & | : | |
| | : | |
| JOSHUA WALKER, | : | ID No. 1708016596 |
| | : | In and for Kent County |
| Defendants. | : | |

**ORDER**

Submitted: February 5, 2018
Decided:  February 15, 2018

On this 15th day of February 2018, having considered Defendants Brandon Satchell's and Joshua Walker's motion to suppress, and the State's response, it appears that:

1. This matter involved four defendants who allegedly committed a home invasion west of Camden on August 23, 2017.  The State jointly indicted the four defendants for two counts of Home Invasion, three counts of Robbery First Degree, Assault First Degree, Possession of a Firearm During the Commission of a Felony, and other related charges, including weapon offenses.   Defendants Satchell and Walker (hereinafter collectively "Defendants") filed a consolidated motion to suppress evidence, alleging that the responding officers had no lawful basis to

conduct a traffic stop of their vehicle, or in the alternative to conduct an investigatory stop of the vehicle.[1]

2. The Court finds the following relevant facts after a suppression hearing held on February 1st and 5th, 2018. At approximately 3:00 AM, on August 23, 2017, Troopers Hall and McCauley from the Delaware State Police received a call regarding a home invasion with shots fired. A female reported the crime location to be a residence on Moose Lodge Road, outside of Camden. The caller indicated that the home owner was bleeding. Both Troopers responded quickly. At the time the officers received the dispatch, Trooper McCauley believed the incident to be still in progress. While both Troopers were in route, the caller indicted that two suspects, believed to be a man and a woman, fled the residence on foot.

3. Trooper Hall arrived on Moose Lodge Road first, within approximately five minutes of the 911 call and headed toward the crime scene. He then passed a Dodge Durango with multiple occupants. The approaching vehicle did not dim its headlights as it passed him and it travelled at approximately five miles per hour. He testified that because he activated his overhead lights, he saw the passing driver's face. That driver looked surprised to see a marked Delaware State Police vehicle. He then saw the vehicle in his rear view mirror approach Moose Lodge Road's intersection with Westville Road and begin a right turn toward Camden, and then abruptly turn left instead. He testified that the vehicle did not use a turn signal. At almost the same time as the Durango turned, Trooper Hall relayed to Trooper McCauley that he just passed a vehicle that was now turning left on Westville Road (away from Camden). He did not, however, relay to Trooper McCauley what the

---

[1] The matter originally involved four co-Defendants who jointly moved to suppress seized evidence. Immediately prior to the suppression hearing, two of the Defendants entered pleas.

Court finds to have been both a headlight violation[2] and a turn signal violation[3]. Trooper Hall also did not relay to Trooper McCauley any other details about the vehicle, such as his observation of the surprised look on the driver's face as he passed it.

4. At virtually the same time that Trooper Hall radioed Trooper McCauley regarding the vehicle, Trooper McCauley approached the same intersection coming from Camden. After considering Trooper McCauley's testimony, which the Court finds to be credible, and reviewing his mobile video recorder video (hereinafter "MVR"), the Court finds consistency. Namely, a flash of headlights visible on the MVR provides an appropriate inference that the Durango initially made a move to head toward Camden. Given an approaching vehicle, the Durango then instead turned abruptly left at the intersection. Trooper McCauley described this as an "evasive maneuver." The Court also finds Trooper McCauley's testimony that he did not see a turn signal to be credible, as well as his testimony that he most likely would had seen it if activated. After the vehicle turned left onto Westville Road from Moose Lodge Road, Trooper McCauley followed the vehicle for a period of time and then stopped it. After stopping the Durango and approaching it, he observed evidence in plain view inside the vehicle that the State alleges linked its occupants to the home invasion.

5. In evaluating a motion to suppress evidence seized during a warrantless search or seizure, the State bears the burden of establishing its legality.[4] The State

---

[2]*See* 21 *Del. C.* § 4350(1) (providing that "[w]henever a driver of a vehicle approaches another vehicle within 500 feet, such driver shall use . . . [t]he lowermost distribution of light or composite beam . . . to avoid glare at all times . . ..").

[3] *See* 21 *Del. C.* § 4155(a) (providing that "[n]o person shall so turn any vehicle [at an intersection] without giving an appropriate signal . . .").

[4] *State v. Holmes*, 2015 WL 5168374, at * 3 (Del. Super. Ct. Sept. 3, 2015) (citations omitted).

must persuade the Court by a preponderance of the evidence that an initial stop, arrest and search were lawful.[5] When it comes to a traffic stop, it must be justified at its inception by reasonable suspicion of criminal activity.[6] Delaware courts consistently define reasonable articulable suspicion as an "officer's ability to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion."[7] Courts must evaluate the intrusion "through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[8] As with probable cause evaluations for arrest, the Court must also evaluate the reasonableness of a *Terry*-length detention based on the totality of the circumstances.

6. The State does not contest the Defendants' standing to challenge the stop. The State argues that Trooper McCauley had reasonable articulable suspicion to stop the vehicle on two grounds. First, the State argues that there was reasonable suspicion to believe that the Durango turned left at the intersection without a turn signal. Second, based on the totality of the circumstances, the State argues that there was reasonable suspicion to stop the vehicle to further the home invasion investigation.

7. The Defendants counter by arguing that Trooper McCauley's testimony is not credible regarding the alleged turn signal violation. They rely heavily on Trooper McCauley's MVR in arguing that it would have been impossible for him to conclude that the Durango did not use a turn signal because the distance was too great for him to have seen the turn signal. The Defendants also counter that there

---

[5] *Id.* (citation omitted).
[6] *Caldwell v. State*, 780 A.2d 1037, 1045-46 (Del. 2001).
[7] *Holden v. State*, 23 A.3d 843, 847 (Del. 2011).
[8] *Id.*

4

were insufficient facts to generate reasonable suspicion that the Durango's occupants committed the home invasion. In this regard, they argue that although the hour was late, and the vehicle was in the immediate area of the home invasion, Trooper McCauley acted on a mere hunch when stopping it.

8. Here, after carefully reviewing Trooper McCauley's MVR and his demeanor when testifying, the Court finds credible Trooper McCauley's testimony that he did not see a turn signal and would have if it was used. The Court accepts his testimony that his sight was clearer and superior to that of the MVR, which is of limited quality. Also, although the Court does not rely upon Trooper Hall's testimony that he observed a turn signal violation to support a justification for the stop, his consistent testimony corroborates Trooper McCauley's testimony that he did not observe a turn signal. [9] Accordingly, the stop was justified on that basis.

9. Independent of the legal traffic stop, the following facts found by the Court also justified an investigatory stop of the vehicle. First, the Court finds that the area was a significantly rural area. Although there were some developments in the general area, the satellite imagery of the area offered into evidence by the Defendants, shows that Moose Lodge Road was not heavily inhabited. At 3:00AM, within approximately five minutes of a home invasion, a car travelling on that rural roadway away from the crime location, coupled with no other cars travelling on that road at that late hour supports reasonable suspicion. The Delaware Supreme Court has recognized that the location of the stop is a factor to be evaluated. [10] Here, the

---

[9] The State did not address the potential applicability of the collective knowledge doctrine and to what extent that may have permitted the pooling of the two officer's information for purposes of the stop. *See Holmes*, 2015 WL 5168374, at \*5 (discussing the parameters of the doctrine). Accordingly, the Court does not address its applicability to the stop at issue. The Court bases its finding solely on the facts available to Trooper McCauley before he stopped the Defendants' vehicle.

[10] *State v. Rollins*, 922 A.2d 379, 384 (Del. 2007).

rural location, proximity to the crime scene, and early morning hour supported Trooper McCauley's suspicion. These facts are properly considered when evaluating the totality of the circumstances.

10. In addition, the Durango made an unusual evasive maneuver to avoid contact with another approaching vehicle (which was in fact Trooper McCauley's patrol vehicle) very shortly after it passed Trooper Hall's vehicle. While avoiding police contact alone, in itself, does not justify a stop, it is properly considered as a factor in the totality of the circumstances.[11] Also to be considered in the totality of the circumstances, is the fact that Trooper Hall "called out" the vehicle to his partner, Trooper McCauley. Trooper McCauley persuasively testified that he knew something was amiss with the vehicle because his partner identified it on the radio. Trooper McCauley also made a reasonable assumption, based on his training and experience, that home invaders in such a rural area, would need a vehicle as opposed to being on foot. Those facts combined to justify more than a mere hunch that the vehicle leaving the rural road where a home invasion occurred mere minutes before was involved in the crime. While these facts, when considered in isolation could indicate innocent behavior, combined they provide reasonable articulable suspicion that the Defendants were engaged in criminal activity. Namely, they provided Trooper McCauley, the reasonable, articulable suspicion necessary to perform an investigatory stop of the vehicle.

11. As a final matter, the ultimate benchmark for any such detention is reasonableness. When weighing the totality of the circumstances, the Court also finds it appropriate to balance the immediacy and level of the potential harm against the limited nature of a vehicle stop. In the separate though similar context of a traffic

---

[11] *See Id.* at 386 (recognizing the high-crime nature of a neighborhood as a factor supportive, though not conclusive, of reasonable suspicion).

6

stop for erratic driving based solely on an anonymous tip, the Delaware Supreme Court has recognized that in the context of traffic stops *where a vehicle is mobile*, it is appropriate for courts to balance the "potentially imminent threat of harm to the public" against what is "the comparatively modest intrusion on individual liberty that a traffic stop entails."[12]  While our Supreme Court evaluated that issue in the context of a driving under the influence stop, the risk to the public involved in a suspected home invasion shooting certainly weighs, at a minimum, as significantly as the danger involved with driving under the influence.  In such a balancing, the initial detention was comparatively modest.  Pursuant to the facts available to Trooper McCauley prior to the stop, he was justified in making this reasonable stop.

WHEREFORE, for the aforementioned reasons, the Defendants' Motion to Suppress is DENIED.

**IT IS SO ORDERED.**

/s/Jeffrey J Clark
Judge

---

[12] *Bloomingdale v. State*, 842 A.2d 1212, 1221 (Del. 2004).