IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
January 28, 2020 Session

## STATE OF TENNESSEE v. KENDALL ALLISON CLARK

**Appeal from the Criminal Court for Hamblen County**
**No. 17CR076    Alex Pearson, Judge**

_____

### No.  E2019-00515-CCA-R3-CD

_____

The Defendant, Kendall Allison Clark, pleaded guilty in the Criminal Court for Hamblen County to driving under the influence (DUI), a Class A misdemeanor.  *See* T.C.A. § 55-10-401 (2018).  The trial court sentenced the Defendant to eleven months, twenty-nine days suspended to probation after forty-eight hours in confinement.  On appeal, the Defendant presents a certified question of law regarding the legality of the traffic stop.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and TIMOTHY L. EASTER, JJ. joined.

Bryce McKenzie (on appeal) and Bryan E. Delius (on appeal and at trial), Sevierville, Tennessee, for the appellant, Kendall Allison Clark.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Connie Trobaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case relates to the July 7, 2016 traffic stop of the Defendant's vehicle based upon two 9-1-1 calls and the subsequent observations by a police officer.  The Defendant filed a motion to suppress the evidence obtained as a result of the stop, contending that the officer lacked reasonable suspin or probable cause to initiate a stop.  The trial court denied the motion to suppress, and, as a result, the Defendant pleaded guilty to DUI, reserving a certified question of law regarding the legality of the traffic stop.

At the suppression hearing, audio recordings of the 9-1-1 calls and the video recording from a police cruiser were played for the trial court.

In the first 9-1-1 call, at 11:18 a.m., Timothy Whitt reported that a white Toyota Tundra truck had been parked at the end of his sister-in-law's driveway and that the man inside was "either passed out or dead." Mr. Whitt provided the address and said the truck had been parked for about thirty to forty minutes and that the driver was slumped over to the right. Mr. Whitt said that his vehicle was parked "across" from the truck and that he was not going to "spook" the driver and was going to drive away. When asked by the dispatcher if he had checked on the driver to determine if the driver was breathing, Mr. Whitt stated that he had not but asked if the dispatcher wanted him to check on the driver. Mr. Whitt expressed concerned that he did not know what the driver would do if he approached the truck, and the dispatcher stated that a police officer and an ambulance were being dispatched to the location identified by Mr. Whitt.

In the second 9-1-1 call, about five minutes later at 11:23 a.m., Mr. Whitt stated that the driver of the white Tundra awoke, "drove through a ditch," and was driving on a roadway identified by Mr. Whitt. He provided the dispatcher with the direction in which the truck traveled before the recording ended.

In the police cruiser video, the police officer followed a white Toyota Tundra truck for approximately one minute before the truck turned right off of the roadway and into a commercial shopping center parking lot. The truck maintained its lane of travel, did not swerve, and the driver turned on the right signal light before turning right into the parking lot. The driver parked and left the truck. The police officer parked his cruiser behind the truck, preventing it from leaving. The recording does not reflect the activation of blue lights.

Timothy Whitt testified that he was employed as a medical transport driver and that he was the caller in both 9-1-1 calls. He said that he drove a client home from a doctor's appointment near his sister-in-law's home and that he saw a white truck parked in her driveway. Mr. Whitt said that he parked across the road from the Defendant's truck, that he watched the Defendant for five to fifteen minutes, that the Defendant did not move, and that Mr. Whitt called 9-1-1. He knew the Defendant's truck had been parked for about thirty minutes when he called 9-1-1.

Mr. Whitt testified that he saw the Defendant "slumped over to the right-hand side" of the steering wheel, that the truck's engine was on, and that it looked as though the Defendant's foot was pressing the brake. Mr. Whitt thought the Defendant's foot "fell off" the brake because the truck "rolled" forward into a ditch. Mr. Whitt said that the Defendant's truck struck a highway sign and that the truck backed up, pulled onto the highway, and turned left onto another highway.

Mr. Whitt testified that he placed a second 9-1-1 call when the Defendant's truck began to move. He agreed he told the 9-1-1 dispatcher that the Defendant was unconscious or dead based upon the Defendant's being slumped over to the right. He agreed that he asked the dispatcher if he could leave the scene and said that he did not want to wake the Defendant because of a previous experience Mr. Whitt had with an intoxicated driver. Mr. Whitt recalled that a police officer began following the Defendant after Mr. Whitt had followed the Defendant for about three miles.

Mr. Whitt testified that the responding police officer called him to obtain information about what he had seen. Mr. Whitt said that he told the police officer to look for damage on the truck's driver's side because it struck a road sign. Based upon Mr. Whitt's previous experiences, he believed the Defendant was intoxicated.

On cross-examination, Mr. Whitt testified, after he was presented with his previous testimony from the preliminary hearing, that he did not observe the Defendant violate the rules of the road. Mr. Whitt stated that the Defendant's truck did not swerve or move outside the lane of travel during the time he followed the Defendant. Mr. Whitt agreed he previously testified that the Defendant did not appear to have difficulty driving his truck. Mr. Whitt said that he lost sight of the Defendant once before the police officer began following the Defendant. Mr. Whitt said that he could not see what the Defendant was doing, if anything, when the truck was parked at the end of the driveway because of the truck's dark window tint. Mr. Whitt said, though, that he saw the Defendant slumped over to the right.

Mr. Whitt testified that he first reported that the Defendant's truck struck the road sign during his telephone conversation with the police officer and that this conversation occurred after the traffic stop. Mr. Whitt agreed that he told the dispatcher that the Defendant's truck "had gone through the ditch and up into the roadway." Although Mr. Whitt thought the Defendant had been intoxicated, Mr. Whitt agreed that he did not have any information showing the Defendant had been intoxicated.

Morristown Police Officer Devin Cribley testified that he worked for the Hamblen County Sheriff's Department at the time of the traffic stop and that he received information "about a vehicle at the bottom of a driveway that had been there for 30 or 40 minutes, a person slumped over the wheel, wanted to check on his welfare." He said that before he could drive to where the truck had been parked, he was notified that the truck had driven through a ditch, onto the roadway, and left the area. He said that he saw the truck traveling on the roadway, that he followed the truck, and that he initiated a traffic stop.

Officer Cribley testified that he observed the Defendant's driving, which "appeared to be fine other than pulling into the complex itself; he ran over the curb." He said that he turned on his blue lights when he parked behind the Defendant's truck in the parking lot. Officer Cribley said that the Defendant had already left the truck when the stop was initiated.

On cross-examination, Officer Cribley was presented with his previous testimony regarding his reason for stopping the Defendant. Officer Cribley said that he was told the Defendant had been slumped over the steering wheel on the side of the road for an extended period of time at a specific address and that he stopped the Defendant's truck about three to five miles from this address. Officer Cribley agreed that he followed the Defendant for about one mile and that the Defendant had not been slumped over the steering wheel during this time.

Officer Cribley testified that when he followed the Defendant's truck, the Defendant did not speed, did not swerve, and maintained his lane of travel. Officer Cribley said that the Defendant's driving did not provide an indication of impairment, "other than pulling into the parking lot itself, running over the curb." Officer Cribley agreed that he turned on his blue lights when the Defendant turned on the signal to turn into the parking lot. When asked if he turned on his blue lights before the Defendant left the roadway, he said, "I don't know exactly when I initiated the blue lights, if it was before or after he turned into the parking lot." Officer Cribley denied that he stopped the Defendant's vehicle because the Defendant had "pulled through a ditch" and said he stopped the Defendant's vehicle because he received "information [the Defendant] was slumped over the wheel" five miles before the stop occurred and because he wanted to "check[] on his welfare."

A portion of the police cruiser video was played for the trial court. When Officer Cribley was asked if his testimony remained that the Defendant's truck ran over a curb, he stated, "You didn't see that?" Defense counsel responded, "Absolutely not. Did you?" Officer Cribley maintained that the recording showed the Defendant's truck ran over a curb. Officer Cribley stated that the Defendant turned on his signal at an appropriate distance before turning into the parking lot and that the Defendant maintained his lane of travel. Officer Cribley agreed that "[n]othing about what [he] saw and observed personally gave [him] the ability to stop this vehicle."

The trial court determined that the critical issue in this case was the information "relayed by the caller prior to the initiation of the traffic stop." The court determined that the video recording did not reflect "poor driving" by the Defendant and that Officer Cribley was unable to articulate any reason for establishing the Defendant had violated the rules of the road. After the court reviewed the video recording, it determined that the Defendant displayed "good driving." The court stated that any deficiency in the

information provided during the 9-1-1 calls, therefore, could not be cured by Officer Cribley's independent observations.

The trial court determined that recordings of the 9-1-1 calls provided information that the Defendant had been parked at Mr. Whitt's sister-in-law's home for approximately thirty minutes and that the Defendant had been slumped "over to the right or dead." The court stated that Mr. Whitt identified himself during the 9-1-1 call, identified the location and the Defendant's truck, and provided relevant information, including the amount of time the truck had been at the location. The court found that during the second 9-1-1 call, Mr. Whitt provided information that the truck was no longer parked at the identified location and was driving on a specific highway. The court placed significant weight upon Mr. Whitt's statement that the Defendant's truck drove through a ditch and onto the roadway. The court determined that the information provided by Mr. Whitt, who was a known citizen informant, was sufficient to establish reasonable suspicion to initiate a traffic stop. The court stated that although Mr. Whitt stated that he thought the Defendant was intoxicated, additional information provided by Mr. Whitt was "separate and apart" and provided Officer Cribley with "the basis for that conclusion that the officer could rely on." The court denied the motion to suppress.

After the suppression hearing, the Defendant pleaded guilty and reserved the following certified question:

> Whether the trial court erred in denying the Defendant's motion to suppress when, at the time a law enforcement officer seized the Defendant by initiating a traffic stop, no exception to the warrant requirement existed in that there was no probable cause or reasonable suspicion of criminal activity and no community caretaking exception, as required by Article I, Section 7 of the Tennessee Constitution and Fourth and Fourteenth Amendments to the Constitution of the United States.

Tennessee Criminal Procedure Rule 37(b)(2)(A) provides that an appeal can be taken from a plea of guilty if the Defendant enters into a plea agreement and explicitly reserves with the consent of the State and the trial court a certified question of law that is dispositive of the case. *See* Tenn. R. Crim. P. 37(b)(2)(A)(i)-(iv); *State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003). "An issue is dispositive when this court must either affirm the judgment or reverse and dismiss. An issue is never dispositive when we might reverse and remand[.]" *State v. Wilkes*, 684 S.W.2d 663, 667 (Tenn. Crim. App. 1984). Furthermore, the fact that the defendant, the State, and the trial judge have agreed the issue is dispositive does not bind this court. *State v. Preston*, 759 S.W.2d 647, 651 (Tenn. 1988). "[T]he appellate courts must . . . determine if the record on appeal demonstrates how that question is dispositive of the case . . . . If the appellate court does not agree that the certified question is dispositive, appellate review should be denied."

*Id*. (citing *State v. Jennette*, 706 S.W.2d 614, 615 (Tenn. 1986)); *see State v. Dailey*, 235 S.W.3d 131, 134-35 (Tenn. 2007). The certified question must also clearly identify "the scope and limits of the legal issue reserved." *See* Tenn. R. Crim. P. 37(b)(2)(A)(ii).

The Defendant contends that the stop was not supported by probable cause or reasonable suspicion, arguing the information provided by Mr. Whitt and relayed to Officer Cribley was insufficient to establish reasonable suspicion to initiate a traffic stop, and that the community caretaking exception to the warrant requirement did not permit the warrantless seizure of the Defendant. The State responds that reasonable suspicion supported the traffic stop and that the community exception permitted the warrantless seizure.

We agree with the parties that the certified question is dispositive of the case because the sole evidence of the Defendant's intoxication was obtained as a result of the traffic stop and that absent reasonable suspicion or the application of the community caretaking doctrine the traffic stop would not have been lawful. The question identifies the scope and limits of the issue reserved. We, therefore, consider the question on its merits.

A trial court's findings of fact on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996); *State v. Jones*, 802 S.W.2d 221, 223 (Tenn. Crim. App. 1990). Questions about the "credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact." *Odom*, 928 S.W.2d at 23. The prevailing party is entitled to the "strongest legitimate view of the evidence and all reasonable and legitimate inferences that may be drawn from that evidence." *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998); see *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). The trial court's application of the law to its factual findings is a question of law and is reviewed de novo on appeal. *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997).

The Fourth Amendment to the United States Constitution and article I, section 7 of the Tennessee Constitution protect individuals from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Tenn. Const. art. 1, § 7. Warrantless seizures are "presumed unreasonable, and evidence discovered as a result thereof is subject to suppression unless the State demonstrates that the . . . seizure was conducted pursuant to one of the narrowly defined exceptions to the warrant requirement." *State v. Yeargan*, 958 S.W.2d 626, 629 (Tenn. 1997); *see Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971); *State v. Binette*, 33 S.W.3d 215, 218 (Tenn. 2000).

A law enforcement officer's initiating a traffic stop constitutes a seizure pursuant to the United States and Tennessee Constitutions. *Whren v. United States*, 517 U.S. 806, 809-10 (1996); *see Delaware v. Prouse*, 440 U.S. 648, 653 (1979); *see also State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997); *State v. Pulley*, 863 S.W.2d 29, 30 (Tenn. 1993). However, a police officer is permitted to initiate a traffic stop without a warrant for the purpose of a brief investigatory stop based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [an] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see Binnette*, 33 S.W.3d at 218. The objective standard for determining whether a police officer has specific and articulable facts that a suspect has committed a crime or is about to commit a crime focuses on whether "the facts available to the officer at the moment of the seizure . . . warrant a man of reasonable caution in the belief that the action taken was appropriate[.]" *Terry*, 392 U.S. at 21-22 (internal quotation marks and citations omitted); *see State v. Garcia*, 123 S.W.3d 335, 344 (Tenn. 2003).

"Reasonable suspicion is a particularized . . . basis for suspecting the subject of a stop of criminal activity, and it is determined by considering the totality of the circumstances surrounding the stop." *Binette*, 33 S.W.3d at 218 (internal citations omitted). This determination includes considerations relative to "'(i) the public interest served by the seizure, (ii) the nature and scope of the intrusion, and (iii) the objective facts upon which the law enforcement officer relied in light of his knowledge and experience.'" *Pulley*, 863 S.W.2d at 34 (quoting *United States v. Mendenhall*, 446 U.S. 544, 561 (1980) (Powell, J., concurring)). The objective facts upon which the officer relied may include, but are not limited to, the officer's observations, information received from fellow officers, information received from citizens, and the "pattern of operation of certain offenders." *State v. Watkins*, 827 S.W.2d 293, 294 (Tenn. 1992). "As a general rule . . . the stop of an automobile is constitutionally reasonable, under both the state and federal constitutions, if the police have probable cause or reasonable suspicion to believe that a traffic violation has occurred." *State v. Vineyard*, 958 S.W.2d 730, 734 (Tenn. 1997) (citing *Whren v. United States*, 517 U.S. 806 (1996)).

For purposes of the present case, the parties do not dispute that a warrantless seizure occurred. Within the context of warrantless searches and seizures, the courts have recognized certain exceptions to the warrant requirement. *See, e.g.*, *State v. Meeks*, 262 S.W.3d 710, 722 (Tenn. 2008) (listing some of the commonly recognized exceptions to the warrant requirement). The State has the burden to demonstrate that a warrantless search falls within an exception to the warrant requirement. *Id.*

In determining whether a police officer has reasonable suspicion for an investigatory stop, our supreme court "has distinguished between information provided by a known citizen informant and that obtained from a criminal or professional informant." *State v. Luke*, 995 S.W.2d 630, 636 (Tenn. Crim. App. 1998). As relevant to

this case, information provided by a known citizen informant "is presumed to be reliable" because a citizen informant has "gained . . . information through first-hand knowledge." *Id*.; *see State v. Cauley*, 863 S.W.2d 411, 417 (Tenn. 1993). Although a criminal informant provides "information in exchange for some consideration," a citizen informant "acts in the interest of society or personal safety." *Luke*, 995 S.W.2d at 636; *see State v. Smith*, 867 S.W.2d 343, 347 (Tenn. Crim. App. 1993). In order for the information provided by a citizen informant to be presumed reliable, "information about the citizen's status or his or her relationship to the events or persons involved must be present." *Luke*, 995 S.W.2d at 636.

Our supreme court's opinion in *State v. Hanning*, 296 S.W.3d 44, 46 (Tenn. 2009), is instructive. In *Hanning*, a reliable 9-1-1 caller reported a "recklessly driven truck" on the interstate. The caller described the truck, provided the direction in which the truck traveled, and stated that the truck had exited the interstate at an identified ramp. A police officer immediately drove in the direction provided by the 9-1-1 caller, exited the interstate at the provided location, and found a truck matching the 9-1-1 caller's description parked at the end of the exit ramp. Although the truck was not obstructing the flow of traffic, the officer activated his blue lights and initiated a traffic stop. *Id*. at 46. Our supreme court determined that although a truck parked at the end of an exit ramp without obstructing traffic flow was not a criminal offense, "it was sufficiently unusual" to warrant the officer's suspicion that the truck had been the subject of the 9-1-1 call. *Id*. at 50. The court determined that although the officer did not personally observe reckless driving or a violation of the rules of the road, the intrusiveness of a brief detention of the truck was minor and that the "report that a vehicle is being driven recklessly or erratically suggests that the driver may be under the influence of alcohol or drugs, fatigued, or in physical distress." *Id*. at 51 (citing *State v. Rutzinski*, 623 N.W.2d 516, 526 (Wis. 2001)). The court concluded that the detention of the driver "served the public's interest in the prevention of reckless driving," that "the scope of what was intended to be a temporary stop was minor," and that the warrantless traffic stop was "justified upon reasonable suspicion of criminal activity." *Id*. at 53.

The record reflects that Mr. Whitt identified himself in the 9-1-1 calls, which occurred in the late morning hours, and provided his cell phone number to the dispatcher. Mr. Whitt reported that a white Toyota Tundra truck had been parked at the end of his sister-in-law's driveway for approximately thirty minutes and that the man inside was "either passed out or dead" because the man was slumped over to the right of the steering wheel. Mr. Whitt was inside his vehicle, which was parked "across" from the white Tundra at the time of the initial 9-1-1 call. In the subsequent 9-1-1 call, Mr. Whitt stated that the man awoke and drove through a ditch. Mr. Whitt provided the name of the roadway and the direction in which the truck traveled, and Mr. Whitt followed the Defendant's truck until Officer Cribley arrived to follow the Defendant. As a result, the record supports the trial court's determination that Mr. Whitt was a known citizen

informant and that the information he provided was presumed to be reliable. The remaining question is whether the information provided by Mr. Whitt in the 9-1-1 calls was sufficient to establish reasonable suspicion to believe the Defendant was engaged in criminal activity, supporting the warrantless stop of the Defendant's truck.

The record reflects that Officer Cribley was told that the Defendant's white Toyota Tundra had been parked at the end of Mr. Whitt's sister-in-law's home for approximately thirty minutes. Mr. Whitt said that the Defendant was either unconscious or dead because the Defendant was slumped over to the right of the steering wheel. Mr. Whitt stated that the Defendant awoke and drove through a ditch and onto an identified roadway. Although the police cruiser video recording does not reflect a date and time, Mr. Whitt followed the Defendant until Officer Cribley arrived to follow the Defendant. Officer Cribley began following the Defendant's truck, and the officer agreed that the Defendant was not slumped over during that time.

This evidence shows that it was reasonable for Officer Cribley to determine that the white Toyota Tundra he located was the same truck identified in the 9-1-1 calls. The truck was found on the same roadway and traveling in the same direction provided by Mr. Whitt. Likewise, Officer Cribley found the truck close in time to the 9-1-1 calls, and, therefore, he had reasonable suspicion to believe that the truck recently had been driven through a ditch and onto a roadway after the driver had been slumped over during the immediately preceding time period. The stop occurred approximately five miles from the Defendant's initial location at the end of the driveway. Although the officer did not observe the Defendant driving through a ditch and onto a roadway, the reliable report of erratic driving suggested that the driver could have been impaired. As a result, we conclude that reasonable suspicion justified a warrantless detention of the Defendant. The trial court did not abuse its discretion by denying the motion to suppress on this basis.

Although we have concluded that the warrantless traffic stop was supported by reasonable suspicion, we will consider whether the community caretaking exception to the warrant requirement likewise supported the traffic stop. Pursuant to the community caretaking doctrine, police officers may, separate from any duties related to the detection or investigation of criminal activity or collection of evidence related to criminal activity, engage in activities that are in furtherance of the general safety and welfare of citizens who may be in peril or otherwise in need of assistance. *State v. McCormick*, 494 S.W.3d 673, 680-83 (Tenn. 2016); *see Cady v. Dombrowski*, 413 U.S. 433 (1973). Thereby, a warrantless seizure is justified if the State establishes the following:

> (1) the officer possessed specific and articulable facts which, viewed objectively and in the totality of the circumstances, reasonably warranted a conclusion that a community caretaking action was needed, such as the

possibility of a person in need of assistance or the existence of a potential threat to public safety; and (2) the officer's behavior and the scope of the intrusion were reasonably restrained and tailored to the community caretaking need.

*McCormick*, 494 S.W.3d at 687 (quoting *State v. Moats*, 403 S.W.3d 170, 195 (2013) (Clark and Koch, JJ., dissenting), *overruled by McCormick*, 494 S.W.3d at 684). "'Determining whether police action is objectively reasonable in light of the circumstances requires careful consideration of the facts of each case[,]' including 'the nature and level of distress exhibited by the citizen, the location, the time of day, the accessibility and availability of assistance other than the officer, and the risk of danger if the officer provides no assistance.'" *Id.* (quoting *Moats*, 403 S.W.3d at 195-96 (Clark and Koch, JJ., dissenting)). In applying this analysis, trial courts should "meticulously consider the facts and carefully apply the exception in a manner that mitigates the risk of abuse." *McCormick*, 494 S.W.3d at 688.

The Defendant relies upon *State v. Deborah Jean Weston*, No. E2015-01530-CCA-R3-CD, 2016 WL 4132543 (Tenn. Crim. App. Oct. 23, 2018), to support his argument that, at the time of the police encounter, he did not display any signs of distress or the need for the officer's assistance. In *Deborah Jean Weston*, a police officer, who was stopped at a traffic light, saw the driver leave a truck stopped at the light to look at the rear bumper. After inspecting the bumper, the driver spoke to the defendant, whose vehicle was behind the truck, and returned to the truck. The driver of the truck and the defendant began to drive forward. Then, the police officer turned on his patrol car's blue lights because the officer thought a motor vehicle accident had occurred, but the driver of the truck and the defendant did not appear to notice the lights. The officer stopped the truck "a short distance away" from the traffic light and examined the truck. The defendant continued driving but was ultimately stopped by the officer, who smelled an odor of alcohol coming from the Defendant after he initiated a traffic stop. *Id*. at *1-3.

This court determined on appeal that these facts did not support the application of the community caretaking doctrine because the traffic stop occurred "some time after and some distance away from the initial incident that caused" the officer to initiate the stop. *Id*. at *4. This court determined that the defendant did not display distress and that neither the driver of the truck nor the defendant showed any need for police assistance. *Id*. Furthermore, this court determined that the evidence did not reflect a "risk of danger or threat to public safety had [the officer] decided not to intervene" because each driver drove away from the initial scene. *Id*.

The State relies upon *State v. John D. Henry*, No. E2017-01989-CCA-R3-CD, 2018 WL 5279095 (Tenn. Crim. App. Oct. 23, 2018), to support its argument that the community caretaking exception to the warrant requirement applied in this case. In *John*

*D. Henry*, the police received a report from an employee at a liquor store that a man was "passed out in his car" behind the store next to a trash dumpster. The employee identified the car, provided the license plate number, and provided a description of the man inside the car. The responding police officers found the car parked near a dumpster and saw the defendant walk from "the back of the building" to the car that the employee had identified. The defendant got inside the car and sat in the driver's seat. The officers initiated a traffic stop, told the Defendant to turn off the car's engine, and smelled an odor of alcohol coming from the Defendant. *Id*. at *1-4.

This court determined on appeal that unlike *Deborah Jean Weston*, the police officers "did not just happen upon" the defendant and were "responding to a call about a man passed out in the car" behind a liquor store. *Id*. at *8. The court noted that the defendant and the car matched the descriptions provided by the store employee and determined that although the officers did not observe anything unusual about the defendant when he walked from the back of the building to his car, the defendant only walked a short distance before sitting in the driver's seat of the car with the engine on. The court determined that the community caretaking exception to the warrant requirement applied because otherwise the officers would have been "'required simply to walk away from [the defendant's] vehicle, thus perhaps permitting a possibly intoxicated individual to drive the vehicle, potentially harming himself and other citizens.'" *Id*. (quoting *Winters v. Adams*, 254 F.3d 758, 764 (8th Cir. 2001)). The court concluded that the officer's warrantless seizure was permissible to evaluate the defendant's condition pursuant to the community caretaking doctrine. *Id*.

We conclude, based upon the facts of the present case, that the community caretaking exception permitted the initial warrantless detention of the Defendant. Officer Cribley was responding to the report of a man having been slumped over the steering wheel of his truck for approximately thirty minutes and having driven through a ditch before driving on the roadway in the late morning hours. The officer did not happen upon the Defendant, as was the case in *Deborah Jean Weston*, but was investigating the report of a driver who could have needed medical care or who could have been impaired, either of which posed a danger to the Defendant and to the other drivers on the roadway seen in the video recording. Mr. Whitt's information was relayed to the officer immediately and the stop was initiated within a short time of the 9-1-1 calls and within approximately five miles of the driveway where the Defendant had been parked and had been slumped over the steering wheel. The Defendant is not entitled to relief on this basis.

As a result, we conclude that the trial court did not abuse its discretion by denying the motion to suppress. The warrantless seizure of the Defendant was supported by reasonable suspicion of criminal activity and was permitted by the community caretaking doctrine. The Defendant is not entitled to relief.

-11-

In consideration of the foregoing and the record as a whole, we affirm the judgment of the trial court.


_____
ROBERT H. MONTGOMERY, JR., JUDGE